UNITED STATES, Appellee

v.

Sonya R. VAUGHAN, Airman First Class
U.S. Air Force, Appellant

No. 02-0313

Crim. App. No. 34107

_____

United States Court of Appeals for the Armed Forces

Argued October 16, 2002

Decided January 24, 2003

BAKER, J., delivered the opinion of the Court, in which GIERKE,
EFFRON and ERDMANN, JJ., joined.  CRAWFORD, C.J., filed an
opinion concurring in the result.


Counsel


For Appellant:  Captain Karen L. Hecker (argued); Major
    Jefferson B. Brown, Major Maria A. Fried, and Lieutenant
    Colonel Beverly B. Knott (on brief); Major Jefferey A.
    Vires.

For Appellee:  Major John D. Douglas (argued); Lieutenant
    Colonel LeEllen Coacher and Lieutenant Colonel Lance B.
    Sigmon (on brief).


Military Judge:  Mary M. Boone

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

Judge BAKER delivered the opinion of the Court.

Appellant was tried by members at a general court-martial.  She was convicted of three specifications of assault and one charge of "child neglect," in violation of Articles 128 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928 and 934, respectively.  Appellant contested one of the assault specifications and entered a conditional plea on the charge of "child neglect" under Article 134, preserving the issue of whether the charge stated an offense.  The adjudged and approved sentence provided for a bad-conduct discharge, confinement for 30 months, and reduction to pay grade E-1.  The Court of Criminal Appeals affirmed the findings and sentence. United States v. Vaughan, 56 M.J. 706 (A.F. Ct. Crim. App. 2001).  We granted review of the following issue:

> WHETHER CHILD NEGLECT THAT DOES NOT RESULT IN HARM TO THE CHILD IS AN OFFENSE UNDER THE UNIFORM CODE OF MILITARY JUSTICE.

For the following reasons, the decision of the lower court is affirmed.

Appellant was stationed at Spangdahlem Air Base, Germany, and resided off-base with her infant daughter in nearby Pickliessem, Germany.  The Government originally charged her with leaving her daughter

2

unattended on divers occasions for time periods ranging from 30-45 minutes up to six hours. In response to Appellant's motion to dismiss the child neglect charge for failure to state an offense, the military judge held that the shorter time periods did not support a charge of child neglect, but allowed the Government to proceed on the longer time period. Appellant conditionally pleaded guilty to child neglect for leaving her 47 days-old daughter, SK, alone in her crib for six hours from 11:00 p.m. to 5:00 a.m. while she went to a club that was a 90 minute drive away. She had called the child's father earlier in the day, and he agreed to watch SK while she went to the club. When the father did not arrive, Appellant left for the club anyway. At the time she left the child, Appellant believed that he was not going to show up, since he had failed to do so on previous occasions. She further testified that she locked the door and that no one other than the father had a key. The father, in fact, did not show up to care for SK during Appellant's absence. SK suffered no apparent harm during Appellant's absence. Appellant was charged with "child neglect" as a "service-discrediting" offense under clause 2 of Article 134.

Appellant challenges her conviction on three bases. First, she argues that she did not have notice that her conduct was subject to criminal sanction under Article 134 and that the specific charge and military judge's subsequent guidance, did not provide proper notice as to the specific elements of the offense.  Second, she argues that her conduct falls outside the definition of child neglect because SK was not harmed by being left alone. Third, she argues that her actions were not service discrediting.  We address each argument in turn.

Discussion

A.    Fair Notice

Due process requires "fair notice" that an act is forbidden and subject to criminal sanction.  United States v. Bivins, 49 M.J. 328, 330 (C.A.A.F. 1998).  It also requires fair notice as to the standard applicable to the forbidden conduct.  Parker v. Levy, 417 U.S. 733, 755 (1974).  In Parker, the Supreme Court gave meaning to these concepts in the context of Article 133, UCMJ, 10 U.S.C. § 933 (2002) and Article 134.[1]

---

[1] 417 U.S. 733, 757-58 (1974).  The Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM] lists two requirements under Article 134 if the conduct addressed is "of a nature to bring discredit upon the armed forces":
    1.  That the accused did or failed to do certain acts; and
    2.  That, under the circumstances, the accused's conduct was . . . of a nature to bring discredit upon the armed forces.
    Id. at Part IV, at para. 60.b. (1)-(2).

The Court held that the language of Article 134 was not so vague that service members could not understand what conduct was proscribed and, therefore, Article 134 was not facially void for vagueness. Id. at 756-57. "Void for vagueness," the Court ruled, "means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." Id. at 757. The Court noted that interpretations by this Court, military authorities, as well as the examples in the Manual for Courts-Martial, United States (2002 ed.), [hereinafter MCM], have limited the broad reach of the literal language of Article 134. Id. at 753-54. At the same time, the Court did not preclude future application of Article 134 to actions not specifically mentioned in the MCM. "But even though sizable areas of uncertainty as to the coverage of the articles may remain after their official interpretation by authoritative military sources, further content may be supplied even in these areas by less formalized custom and usage." Id. at 754 (emphasis added).

Citing Parker v. Levy, this Court has held that as a matter of due process, a service member must have "'fair notice' that his conduct [is] punishable" before

5

he can be charged under Article 134 with a service discrediting offense. Bivens, 49 M.J. at 330. This Court has found such notice in the MCM, federal law, state law, military case law, military custom and usage, and military regulations. See MCM Part IV, at para. 60.c.(4)(b)-(c) (permitting offenses under federal and state law to be charged under Article 134); id. Part IV, at paras. 60-114 (listing specified Article 134 offenses); Article 137, UCMJ, 10 U.S.C. 937 (2002) (requiring explanation to members of punitive UCMJ Articles 77-134 , 10 U.S.C. §§ 877-934 (2002)); United States v. Boyett, 42 M.J. 150, 153-54 (C.A.A.F. 1995)(noting that a court may take judicial notice of regulations as evidence of military custom). United States v. Guerrero, 33 M.J. 295, 298 (C.M.A. 1991)(citing Article 137 and military customs on civilian dress as evidence of notice for prosecution for "cross dressing"). Therefore, the question is whether Appellant had fair notice that leaving her child alone for six hours under the conditions presented, and without apparent harm, was subject to sanction under Article 134.

Both sides agree that child neglect is not specifically listed in the MCM as an Article 134

6

offense.  Therefore, we must look elsewhere to determine whether Appellant should have reasonably contemplated that her conduct was subject to criminal sanction, and not simply the moral condemnation that accompanies bad parenting.

    (1)  Case Law

    Military case law in this area is scant, and arguably can be read to provide some support to both the Government's and Appellant's position.  The Army Court of Criminal Appeals has held that child neglect that does not result in harm is not an Article 134 offense absent a regulation clearly prohibiting the conduct. United States v. Wallace, 33 M.J. 561, 563-64 (A.C.M.R. 1991).  In contrast, the Air Force Court in United States v. Foreman, ACM No. 28008, 1990 CMR LEXIS 622, at * 2 (A.F.C.M.R. May 25, 1990), held in an unpublished opinion, that while child neglect "is viable" as an Article 134 offense, the facts presented during the providence inquiry in that case were insufficient to sustain the conviction.  While these cases are not controlling, they demonstrate that the lower courts' approaches have been contextual, and that service members have heretofore been charged under Article 134 with child neglect for leaving children unattended.

7

Significantly, Appellant's relevant service court has gone furthest in ruling that an offense of "[child neglect] is viable under clause 2 of Article 134." Foreman, 1990 CMR LEXIS at *2.

(2) State Law

Appellant further argues that she did not receive fair notice from state statutes that her conduct overseas was criminal under Article 134. Moreover, even if state statutes provided general notice that child neglect was subject to criminal sanction, several of those statutes require a finding of substantial harm in order to sustain a child neglect conviction. Thus, according to Appellant, absent a showing of substantial harm, her plea is improvident.

In our view, the preponderance of states laws support a contrary conclusion. A majority of state statutes submitted by Appellant (34 of 48, including the District of Columbia) criminalize child neglect in the context of a protected relationship, regardless of actual harm to the child, when the conduct violates a duty of care and places the child at risk of harm.[2] Thus, the better view is that state statutes generally

---

[2] At the time of Appellant's conviction, 33 states and the District of Columbia statutorily made "child neglect" criminally punishable as a felony or misdemeanor. These are listed as an Appendix to this opinion.

8

serve to provide constructive notice that child neglect through absence of supervision or care, with an attendant risk of harm, can constitute a criminal offense.  The locus of the charged conduct does not change the measure of notice.  Appellant was not charged through assimilation of a state statute in Germany, but through application of Article 134, with uniform application worldwide.

    (3)  Custom

    Fair notice does not depend on military case law or state statute alone.  In Parker v. Levy, the Supreme Court recognized that in addition to constructions of Articles 133 and 134 provided by the MCM and military courts, "less formalized custom and usage" may further define the scope of conduct proscribed by Article 134. 417 U.S. at 754.  In our view, there is established military custom of protecting dependents from harm. Dependents are an integral part of the specialized military community which the Supreme Court addressed in Parker.  This is especially true of dependents based overseas over whose welfare the United States bears increased responsibility in the absence of normal familial and social ties, as well as the array of public services available within the United States.  Moreover,

dependents overseas can often face heightened security concerns.

Several Department of Defense (DOD) regulations apply. Department of Defense, Directive 6400.1, Family Advocacy Program (July 23, 1992) [hereinafter Directive 6400.1], for example, addresses the Family Advocacy Program (FAP).  The FAP is a "program designed to address prevention, identification, evaluation, treatment, rehabilitation, followup, and reporting of family violence.  FAPs consist of coordinated efforts designed to prevent and intervene in cases of family distress, and to promote healthy family life."  Id. 10, at para E2.1.5.  Directive 6400.1 states that the local FAP office shall be notified immediately when an act of child abuse occurs.  Id. 5-6, at para. 6.1.  It further defines the term as follows:

> Child Abuse and/or Neglect.  Includes physical injury, sexual maltreatment, emotional maltreatment, deprivation of necessities, or combinations for a child by an individual responsible for the child's welfare under circumstances indicating that the child's welfare is harmed or threatened.  The term encompasses both acts and omissions on the part of a responsible person.

Id. 9, at para. E.2.1.3 (emphasis added).

DOD Instruction 6400.3 further notes that it is DOD policy to "[p]rovide a safe and secure environment for

10

DOD personnel and their families." Department of Defense, Instruction 6400.3, <u>Family Advocacy Command Assistance Team</u> 2, at para. 4.1. (February 3, 1989).

Significantly, Directive 6400.1 mandates that in the case of alleged instances of child neglect and/or abuse:

> [T]he local FAP office . . . shall . . . ensure implementation of the following procedures:
> . . . .
> 6.1.3. <u>Notification of military law enforcement and investigative agencies</u>.
> 6.1.4. Notification of the local public child protective agency (in alleged child abuse cases only) in the United States and where covered by agreement overseas.
> 6.1.5. <u>Observance of the applicable rights of alleged offenders</u>.

Directive 6400.1 5-6, at paras. 6.1, 6.1.3-6.1.5. (emphasis added).

Thus, DOD regulation provides notice that child neglect is potentially subject to military criminal investigation. While DOD and service regulations are not the same as UCMJ offenses, this Court may take notice of such regulations as evidence of notice through custom of an Article 134 offense. <u>United States v. Boyett</u>, 42 M.J. 150, 152 (C.A.A.F. 1995). We need not decide whether custom and regulation, state law, or military case law alone would meet the requirements for

due process notice enunciated in <u>Parker</u>.[3]  We conclude
that when addressed together, appellant should
reasonably have understood that her contemplated conduct
was subject to military criminal sanction.

>     B.    <u>Sufficiency of the Specification</u>

Appellant's due process argument has two facets.  As
addressed above, Appellant argues that she was not on fair
notice that child neglect was subject to criminal sanction
under Article 134.  Additionally, Appellant contends on
appeal that whether or not she was on general notice, the
Government's charge, and subsequently the military judge's
providence inquiry pursuant to <u>United States v. Care</u>, 18
C.M.A. 535 (1969), did not properly define the specific
elements of the offense.  Thus, Appellant was not on fair
notice as to what conduct was specifically proscribed under
Article 134.  We disagree.

In conducting the providence inquiry, the military
judge advised Appellant that the elements of the offense of
child neglect charged under Article 134 were as follows:

> The first element of this specification is that
> between on or about 2 January 1999 and on or about 3

---

[3]  The Government would have us conclude that appellant was inherently on notice that her
conduct was unlawful because it was inherently wrongful.  However, an important
distinction exists between the common sense understanding that a baby left unattended in
a crib for six hours is bad parenting and fair notice that such conduct is criminally
punishable.  While we note that Department of Defense Directive 6400.1, <u>Family Advocacy
Program</u> (July 23, 1992), explicitly states that it is not intended to create criminally
enforceable rights, that does not preclude its use as evidence of military custom.  <u>See
id.</u> 6400.1,  2, para.2.4.  In light of our conclusion above, we need not address the
question of "inherent notice."

    January 1999, at or near Pickliessem, Germany, you
    neglected your daughter, [SK].
         The second element is that you did so by leaving
    [SK] in your house without supervision or care for an
    unreasonable period of time, without regard for the
    mental or physical health, safety, or welfare of
    [SK].
         The third element is that [SK] is a child under
    the age of one year.
         And the fourth element is that under the
    circumstances, your conduct was to the prejudice of
    good order and discipline in the armed forces or was
    of a nature to bring discredit upon the armed forces.

    The Government immediately corrected the military

judge on element four, noting that the child neglect had

only been charged as "service discrediting" under the

second clause of Article 134.  While Appellant had earlier

entered a conditional plea, subject to her motion to

dismiss for failure to state an offense under Article 134,

she did not challenge the specific elements of the offense

as defined by the military judge.  Rather, the judge

reviewed the elements and facts with Appellant ensuring her

understanding of the relationship between fact and law.

During the Care inquiry, for example, the military judge

elaborated on the four elements of the offense:

  MJ: When we talk about negligence in this case, we're
  talking about culpable negligence, where it's above
  what would be simple negligence.  "Culpable
  negligence" is a degree of carelessness greater than
  simple negligence.  "Simple negligence" is the
  absence of due care.  The law requires everyone at
  all times to demonstrate due care for the safety of
  others.  And what a reasonably careful person would

demonstrate under the same or similar circumstances. That is what due care means.

MJ: Now, culpable negligence, on the other hand, is a negligent act or failure to act, accompanied by a gross, reckless, wanton, or deliberate disregard for the foreseeable consequences of your conduct, results to others, instead of merely a failure to use due care. So it's a grossness. It's larger than simple negligence. So those are the definitions and the elements. Do you feel like you understand those?

ACC: Yes, ma'am.

. . . .

MJ: Okay. So, do you agree then that a child of that age, about a month-and-a-half, needs to generally have supervision or someone around them to watch over them?

ACC: Yes, ma'am.

MJ: Now I know that at other times you might leave briefly, and that's one thing, and we talked about that. And I'm not allowing the government to go forward. And I know you've left her before for brief occasions, maybe up to 30 minutes or so, if that's correct. But this is a much longer period of time, six to seven hours.
   So I need to make sure that you feel comfortable that you agree that what you did was more than simple negligence. That means that your decision to leave her—and this wasn't any emergency that made you leave the child, that you had to take care of something else?

ACC: No, ma'am.

MJ: It was just for whatever you wanted to do personally, correct?

ACC: Yes, ma'am.

MJ: It was more than simple negligence. That means that your failure to be there and supervise her and care for her during this period of time, that first

of all, that was unreasonable.  Do you agree that
that period of time was an unreasonable period of
time to leave her in your house alone?

ACC: Yes, ma'am.

MJ: Again, without anybody coming in to take care of
her?

ACC: Yes, ma'am.

MJ: And do you agree that potentially, depending upon
what might happen—sometimes little babies can have
milk or something, and they can vomit little amounts,
or they could potentially, if they're on their back
or their side, or anything like that, choke.  Again,
that didn't happen.  And you were fortunate, because
when you came home the baby was okay.  Is that right?

ACC: Yes, ma'am.

MJ: But do you agree that during that period of time
any number of things potentially could have happened?

ACC: Yes, ma'am.

MJ: I mean, the baby could have needed diapers
changed.  So you agree that that was then an
unreasonable time to leave her, and that that was a
disregard for her mental, her physical health, her
safety, and her potential welfare?

ACC: Yes, ma'am.

. . . .

MJ: And do you agree that under that circumstance,
again, not knowing that he was going to show up or
not, and knowing in the past that he hadn't shown up,
that you were not using the care you should have in
ensuring that somebody was going to be there to take
care of her?

ACC: Yes, ma'am.

> MJ: And, again, do you agree that this is more than mere negligence? It's culpable negligence. That's more than simple negligence. Do you agree?
>
> ACC: Yes, ma'am.

An Article 134 offense that is not specifically listed in the MCM must have words of criminality and provide an accused with notice as to the elements against which he or she must defend. United States v. Davis, 26 M.J. 445, 447-48 (C.M.A. 1988).[4] Article 134 states that a specification not listed in the MCM may be used to allege a general offense under MCM, Part IV, at para. 60.c.(6)(c). Here, because the charged offense was not listed in the MCM, the military judge defined the elements herself, without specifying the source of her definitions.

In our view, the elements she listed capture the essence of "child neglect" as reflected in military custom and regulation as well as a majority of state statutes. The military judge correctly determined that child neglect requires culpable negligence and not just simple negligence. She further concluded that such negligence was defined by what was reasonable under the circumstances,

---

[4] In Davis, the specifications were upheld because they alleged the time and place the conduct occurred and that it was discrediting and prejudicial to good order and discipline. "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." United States v. Davis, 26 M.J. 445, 448 (C.M.A. 1988)(quoting United States v. Sell, 3 C.M.A. 202, 206 (1953)).

i.e., that leaving SK unattended for an "unreasonable time" equated to gross or culpable negligence. Moreover, these are terms in general and common usage within the UCMJ. See e.g., MCM Part IV, at para. 16.b.(3)&c(3) (dereliction in performance of duties); id. at para. 34.c.(3) (improper hazarding of vessel); id. at para. 44.c.(2)(a) (involuntary manslaughter by culpable negligence); id. at para. 80.b.(2)&(c)(firearm, discharging-through negligence); id. at para. 85.c.(2)(homicide, negligent). Finally, consistent with a majority of statutes and military custom and regulation, the military judge did not require a showing of harm, but rather an absence of due care measured by an absence of regard for the mental or physical health, safety or welfare of the child.

This approach is consistent with our conclusion regarding the enumerated offense of maltreatment. United States v. Carson, 57 M.J. 410 (C.A.A.F. 2002) (finding that prosecution for maltreatment does not require proof of physical or mental harm, rather "[i]t is only necessary to show, as measured from an objective viewpoint in light of the totality of the circumstances, that the accused's actions reasonably could have caused physical or mental harm or suffering"). Based on the totality of circumstances, the trier of fact must determine whether an

17

accused's actions reasonably could have caused physical or mental harm or suffering. We do not take issue with the military judge's conclusion in this case that Appellant could properly plead to such a possibility in the case of a newborn infant left alone in a crib for six hours in a locked apartment with all the attendant risks of choking, suffocation, or fire. We need go no further in defining the specific elements of the first requirement for an Article 134 offense – that the accused did or failed to do certain acts.[5] Whether acts or omissions amount to "child neglect" under Article 134, as measured by the elements given above, in another instance will depend on the facts as evaluated by the trier of fact.[6] Thus, we hold that the elements given by the military judge gave Appellant sufficient notice. The military judge properly defined "child neglect" as culpably negligent conduct, unreasonable

---

[5] See Parker v. Levy, 417 U.S. 754, 755-56 (1974)(noting that Levy could not challenge the vagueness of Article 134 Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2002), as "hypothetically applied to the conduct of others"). In the context of the UCMJ, this area of law would benefit from the expertise and review of the political branches. In the interim, this decision, built as it is on military custom, defense regulation, and state statute, will further serve as notice regarding the potential application of Article 134 to instances of child neglect. We may prefer, for sound legal policy reasons, that other branches address this issue first, but we cannot eschew the legitimate questions of law argued by both sides. Our duty is to say what the law is in the context of a given case or controversy.

[6] See 720 Ill. Comp. Stat. Ann. 5/12-21.5 (West Supp. 1998). The Illinois statute, for example, gives a nonexhaustive list of factors to consider in determining "whether a child was left without regard for the mental or physical health, safety, or welfare of that child[.]" Id. at 12-21.5(a). The statute includes: the duration of time that the child was left unsupervised, the condition and location where the child was left, the time of day or night, weather conditions, protection from natural elements, adequate heat and light, and the location of the parent or responsible party at the time relative to the location of the child.

under the totality of the circumstances, that caused a risk of harm to the child.

C.   Service Discredit

Having found that Appellant was on notice and that the offense of child neglect does not require actual harm to the child, we now look to Appellant's final contention that her conduct was not, in any event, service-discrediting and, therefore, not an offense under MCM Part IV, at para. 60.b.  An unlawful act can serve to establish service discredit.  Bivens, 49 M.J. at 330 (prosecuting bigamy, even though specified bigamy elements not met); Davis, 26 M.J. at 448 (noting that conduct that is generally illegal tends to be discrediting for that very reason).  As a result, the Government urges adoption of a per se rule of service discredit in the case of child neglect.  However, given the range of conduct that might reasonably be charged under the specified elements above, inter alia, raising questions of fact regarding time, risk, and location, we decline to do so.  Whether a given act of "child neglect" amounts to criminal conduct under Article 134 will invariably present questions of fact for the trier of fact to determine.  This will be equally true of the second part of the test: whether the conduct was

discrediting. In Appellant's case, we have no finding of fact because she conditionally plead guilty to the offense. Therefore, we rely on the Care inquiry.

We are satisfied, based on the facts of the case that Appellant's plea was provident regarding the service-discrediting element of the offense.[7] Not only did Appellant violate service custom and the norms of many states, her actions while living abroad would not reflect well on the United States military. MCM Part IV, para. 60.c. (3) ("'Discredit' means to injure the reputation of. This clause . . . makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in the public esteem."); Guerrero, 33 M.J. at 298; Davis, 26 M.J. at 448. The behavior of U.S. service members abroad is the face of the armed forces in many countries, and the reputation of the military is equally at stake worldwide.

For these reasons, we affirm the findings and sentence of the Air Force Court of Criminal Appeals.

---

[7] The military judge addressed the issue during her inquiry pursuant to United States v. Care, 18 C.M.A. 535 (1969), as follows:

> MJ: So do you agree that if somebody out there heard about this, and other people knew about this in this community, that they would look down upon an Air Force member leaving their child unaccompanied without a baby-sitter, any supervision, or anybody checking on that child for that lengthy period of time?
>
> ACC: Yes, ma'am.

Appendix

At the time of appellant's conviction, 33 states and the District of Columbia statutorily made "child neglect" criminally punishable as a felony or misdemeanor.

1. Arizona: " [a]ny person . . . having the care or custody of such child . . . causes or permits . . . a child . . . to be placed in a situation where its person or health is endangered . . ." Ariz. Rev. Stat. § 13-3623 (1997) The severity of this offense varies depending on whether or not the circumstances were likely to cause serious injury or death. Id. See Arizona v. Deskings, 152 Ariz. 209, 731 P.2d 104 (Ct. App. 1986) (finding that statutory language is not too vague or overbroad).

2. Arkansas: "[k]nowingly engages in conduct creating a substantial risk of serious harm to the physical or mental welfare of one know by the actor to be a minor." Ark. Code Ann. § 5-27-204 (1997).

3. California: "having the care or custody of any child, . . . willfully causes or permits . . . that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor." Cal. Penal Code § 273a (b)(1998). The severity of this offense varies depending on whether or not the circumstances were likely to cause serious injury or death. Id.

4. Colorado: "permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health . . . ." Colo. Rev. Stat. § 18-6-401(1) (1998).

5. Connecticut: "willfully or unlawfully causes or permits any child under the age of 16 years to be placed in such a situation that life or limb of such child is endangered, the health of such child is likely to be injured or . . . does any act likely to impair the health . . . of any such child . . . ." Conn. Gen. Stat. § 53-21 (1999).

6. Delaware: "[a] person is guilty of endangering the welfare of a child when: [b]eing a parent, guardian or other person legally charged with the care or custody of a child less than 18 years old[,] the person [k]nowingly acts in a manner likely to be injurious to the physical, mental

or moral welfare of the child . . . ."  Del. Code Ann. tit. 11, § 1102(a)(1) (1998).

7.  District of Columbia:  "any person . . . who shall refuse or neglect to provide for any child under the age of 14 years, of which he or she shall be the parent or guardian, such food, clothing and shelter as will prevent the suffering and secure the safety of such child . . . ." D.C. Code Ann. § 22-902 (1999).

8.  Florida:  "a caregiver's failure or omission to provide a child with the care, supervision, and services necessary to maintain the child's physical and mental health, including . . . supervision . . . that a prudent person would consider essential for the well-being of the child . . . . Neglect of a child may be based on repeated conduct or on a single incident or omission that . . . could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death, to a child." Fla. Stat. Ann. ch. 827.03(3)(a)(1)-(2) (1998).

9.  Idaho:  "willfully causes or permits such child to be placed in such situation that its person or health may be endangered . . . ."  Idaho Code § 18-1501(1), (2) (1998). The severity of this offense varies depending on whether or not the circumstances were likely to cause serious injury or death. Id.

10.  Indiana:  "[a] person having the care of a dependent . . . who knowingly or intentionally[] places the dependent in a situation that may endanger his life or health . . . ."  Ind. Code § 35-46-1-4(a)(1) (1998).

11.  Iowa:

     A.  "[a] person who is the father, mother, or some other person having custody of a child . . . who knowingly or recklessly exposes such person to a hazard or danger against which such person cannot reasonably be expected to protect such person's self . . . ."  Iowa Code § 726.3 (1996).
     B.  "knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety . . . [w]illfully deprives a child or minor of necessary food, clothing, shelter, health care or supervision appropriate to the child or minor's age, when the person is reasonably able to make the

22

necessary provisions and which deprivation substantially harms the child or minor's physical, mental or emotional health . . . ."  Iowa Code § 726.6(1)(d) (1996).

12.  Kansas:  "[e]ndangering a child is intentionally and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be injured or endangered." Kan. Stat. Ann. § 21-3608 (1998).

13.  Kentucky:

    A.  "recklessly . . . permits another person of whom he has actual custody to be abused and thereby: [c]auses physical injury; or [p]laces him in a situation that may cause him serious physical injury. . . ." Ky. Rev. Stat. Ann. § 508.120(1)(a)-(b) (1998).

    B.  "'[a]buse' means the infliction of physical pain, injury, or mental injury, or the deprivation of services by a person which are necessary to maintain the health and welfare of a person . . . ."  Ky. Rev. Stat. Ann. § 508.090(1) (1998).

14.  Louisiana:  "[c]hild desertion is the intentional or criminally negligent exposure of a child under the age of ten years, by a person who has the care, custody, or control of the child, to a hazard or danger against which the child cannot reasonably be expected to protect himself, or the desertion or abandonment of such child, knowing or having reason to believe that the child could be exposed to such hazard or danger. Whoever commits the crime of child desertion shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both." La. Rev. Stat. Ann. § 14:93.2.1(A)-(B)(1) (1998).

15.  Maine:  "recklessly endangers the health, safety or welfare of a child under 16 years of age by violating a duty of care or protection."  Me. Rev. Stat. Ann. tit. 17-A, § 554(1)(C) (1998).

16.  Minnesota:  "[a] parent, legal guardian, or caretaker who willfully deprives a child of necessary food, clothing, shelter, health care, or supervision appropriate to the child's age, when the parent, guardian, or caretaker is reasonably able to make the necessary provisions and the deprivation harms or is likely to substantially harm the

child's physical, mental, or emotional health is guilty of neglect of a child . . . ."  Minn. Stat. Ann. § 609.378(1) (1998).

17.  Missouri:  "[a] person commits the crime of endangering the welfare of a child in the second degree if he with criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child less than seventeen years old . . . ."  Mo. Rev. Stat. § 568.050 1.(1) (1999).

18.  Montana:  "knowingly endangers the child's welfare by violating a duty of care, protection, or support. . . . On the issue of whether there has been a violation of the duty of care, protection, and support, the following . . . is admissible [evidence]: . . . abandonment; neglect; lack of proper medical care, clothing, shelter, and food; and evidence of past bodily injury."  Mont. Code Ann. § 45-5-622(1), (5) (1998).

19.  Nebraska:  "knowingly, intentionally, or negligently causes or permits a minor child to be: [p]laced in a situation that endangers his or her life or physical or mental health [or d]eprived of necessary food, clothing, shelter, or care . . . ."  Neb. Rev. Stat. § 28-707(1)(a), (c) (1999).

20.  Nevada:  "[w]illfully causes a child who is less than 18 years of age . . . to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect; or [i]s responsible for the safety or welfare of a child and who permits or allows that child . . . to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect . . . .  'Permit' means permission that a reasonable person would not grant and which amounts to a neglect of responsibility attending the care, custody and control of a minor child."  Nev. Rev. Stat. Ann. § 200.508(1)(a)-(b), (3)(c) (1998).

21.  New Jersey:  "[c]ruelty to a child shall consist [of] . . . exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child. Neglect of a child shall consist in any of the following acts, by anyone having the custody or control of the

child:  (a) willfully failing to provide proper care and sufficient food, clothing, maintenance . . . or (b) failure to do or permit to be done any act necessary for the child's physical or moral well-being . . . ."  N.J. Stat. Ann. § 9:6-1 (1998).

22.  New Mexico:  "'child' means a person who is less than eighteen years of age; 'neglect' means that a child is without proper parental care and control of subsistence, education, medical or other care or control necessary for his well-being because of the faults or habits of his parents, guardian or custodian or their neglect or refusal, when able to do so, to provide them; and 'negligently' refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child. . . . Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be placed in a situation that may endanger the child's life or health. . . ."  N.M. Stat. Ann. § 30-6-1(A)(1)-(3), (C)(1) (1998).

23.  New York:  "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child . . . less than . . . seventeen years old . . . ."  N.Y. Penal Law § 260.10(1) (1998).  See New York v. Watson, 700 N.Y.S.2d 651, 655 (N.Y. Crim. Ct. 1999)(finding legally sufficient claim for leaving seven year old alone for two and one-half hours unharmed, but noting that fact-finders may choose not to convict on such facts).

24.  North Carolina:  "[a]ny parent of a child less than 16 years of age, or any other person providing care to or supervision of such child . . . who creates or allows to be created a substantial risk of physical injury, upon or to such child by other than accidental means is guilty of the Class 1 misdemeanor of child abuse." N.C. Gen. Stat. § 14-318.2(a) (1999).

25.  North Dakota:  "a parent, guardian, or other custodian of any child who willfully commits any of the following offenses is guilty of a class C felony: [f]ails to provide proper parental care or control, subsistence . . . or other care or control necessary for the child's physical, mental, or emotional health, or morals."  N.D. Cent. Code § 14-09-22(1)(b) (1997).

26.  Ohio:  "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. "  Ohio Rev. Code Ann. § 2919.22(A) (1998).

27.  Oklahoma:

A.  "'[a]buse and neglect' means harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare . . . ."  Okla. Stat. Ann. tit. 10, § 7102(B)(1) (1997).

B.  "[a]ny parent or other person who shall willfully or maliciously engage in child abuse or neglect . . . or who shall willfully or maliciously cause, procure or permit any of said acts to be done, shall upon conviction be punished by imprisonment . . .or by a fine . . . ."  Okla. Stat. Ann. tit. 10, § 7115 (1997).

28.  Oregon:

A.  "[a] person commits the crime of criminal mistreatment in the first degree if: [t]he person, in violation of a legal duty to provide care for another person . . . intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person; or  . . . intentionally or knowingly leaves the dependent person . . . unattended at a place for such a period of time as may be likely to endanger the health or welfare of that person. . . . As used in this section 'Dependent person' means a person who because of either age or a physical or mental disability is dependent upon another to provide for the person's physical needs." Or. Rev. Stat. § 163.205(1) (a)-(b) (C), (2) (1997).

B.  "[a] person having custody or control of a child under 10 years of age commits the crime of child neglect in the second degree if, with criminal negligence, the person leaves the child unattended in or at any place for such a period of time as may be likely to endanger the health or welfare of such child." Or. Rev. Stat. § 163.545(1) (1997).

29.  Pennsylvania:  "[a] parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of

the child by violating a duty of care, protection or support." 18 Pa. Cons. Stat. Ann. § 4304(A) (1998).

30.  South Carolina:  "[i]t is unlawful for a person who has charge or custody of a child, who is the parent or guardian of a child, or who is responsible for the care and support of a child to:  place the child at unreasonable risk of harm affecting the child's life, physical or mental health, or safety . . . ."  S.C. Code Ann. § 20-7-50(A) (1998).

31.  Texas:  "'abandon' means to leave a child in any place without providing reasonable and necessary care for the child, under circumstances under which no reasonable, similarly situated adult would leave a child of that age and ability. A person commits an offense if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm."  Tex. Penal Code Ann. § 22.041(a)-(b) (1999).

32.  Vermont:

A.  "[a] person who abandons or exposes a child under the age of two years, whereby the life or health of such child is endangered, shall be imprisoned not more than ten years or fined not more than $1,000 or both."  Vt. Stat. Ann. tit. 13, § 1303 (1998).

B.  "[a] person over the age of 16 years, having the custody, charge or care of a child under ten years of age, who willfully assaults, ill treats, neglects or abandons or exposes such child, or causes or procures such child to be assaulted, ill-treated, neglected, abandoned or exposed, in a manner to cause such child unnecessary suffering, or to endanger his health, shall be imprisoned not more than two years or fined not more than $500, or both."  Vt. Stat. Ann. tit. 13, § 1304 (1999)

33.  Virginia:  "[i]t shall be unlawful for any person employing or having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured, or willfully or negligently to cause or permit such child to be placed in a situation that its life, health or morals may be endangered . . . ."  Va. Code Ann. § 40.1-103 (1998).

27

34.  Wyoming:

    A.  "[n]o parent, guardian or custodian of a child shall . . . knowingly or with criminal negligence cause, permit or contribute to the endangering of the child's life or health by violating a duty of care, protection or support."  Wyo. Stat. Ann. § 6-4-403(a)(ii) (1999).

    B.  "[n]eglect with respect to a child means failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision . . . or any other care necessary for the child's well being."  Wyo. Stat. Ann. § 14-3-202(a)(vii) (1997).

CRAWFORD, Chief Judge (concurring in the result):

While I agree with the result reached by the majority, I disagree with their rationale. In my view, it is inherently illogical to separate questions of notice and service-discrediting conduct into two distinct inquiries because each question is intertwined with and dependent upon the other.

Clause 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2002), states that "all conduct of a nature to bring discredit upon the armed forces," though not specifically criminalized by another UCMJ Article, "shall be taken cognizance of by a . . . court-martial . . . and shall be punished at the discretion of that court." Thus, in contrast to most criminal statutes that speak in terms of prohibited acts, clause 2 of Article 134 speaks in general terms of acts which create a prohibited effect.

Nonetheless, Article 134 is not void for vagueness under the Due Process Clause of the Fifth Amendment. Parker v. Levy, 417 U.S. 733 (1974) (holding judicial constructions of Article 134 have narrowed the reach of its broad language and supplied examples of the conduct it covers). Thus, the question in this case is whether Appellant was fairly on notice that her conduct created the

prohibited effect, i.e.- was service-discrediting within the meaning of Article 134.  If she was, then she could be prosecuted under that Article.

In her brief, Appellant argues in the alternative: First, that she was not on notice her conduct was subject to prosecution under Article 134, and second, that her conduct was not service-discrediting.  The majority accepts these arguments as distinct, and addresses them individually.  As to the lack-of-notice argument, the majority recognizes that "child neglect is not specifically listed in the [Manual for Courts-Martial, United States (2002 ed.)] as an Article 134 offense," and that it has to "look elsewhere to determine whether Appellant should have reasonably contemplated that her conduct was subject to criminal sanction[.]"  __ M.J. at (6-7).

Looking elsewhere (i.e. – military case law, 34 state statutes criminalizing child neglect, and DOD regulations evidencing a military custom of protecting dependents), the majority finds that when these sources are "addressed together, Appellant should reasonably have understood that her contemplated conduct was subject to military criminal sanction."  Id. at (11-12).

As to the non-service-discrediting argument, the majority states:

>       Whether a given act of "child neglect" amounts
>       to criminal conduct under Article 134 will
>       invariably present questions of fact for the
>       trier of fact to determine.  This will be
>       equally true of the second part of the test:
>       whether the conduct was discrediting.

Id. at (19-20) (emphasis added).  The majority then

concludes "Appellant's plea was provident regarding the

service-discrediting element of the offense."  Id. at (20).

In reaching this conclusion, the majority focuses on the

fact that Appellant violated military custom, and did so

abroad.

Thus, the majority clearly states there is a two-part

test.  First, an accused must be on notice that her conduct

can be prosecuted under Article 134.  And second, assuming

the accused is on notice, her conduct must be service-

discrediting.  Yet how can an accused (1) be on notice that

her conduct is punishable under clause 2 of Article 134,

while (2) it still must be determined whether her conduct

created the prohibited effect, i.e. - service-discredit?

In my view, that is not possible.

Clause 2 of Article 134 punishes only service-

discrediting conduct.  Therefore, it is impossible to be on

notice one's conduct violates clause 2 of Article 134

without also being on notice the conduct is service-

discrediting within the meaning of the statute.  Stated

differently, there simply is no way the first prong of the majority's test can be satisfied without the second prong of the test also being satisfied – and that is because they are intertwined components of the same analysis. I cannot imagine a conclusion by this Court that an accused was on notice his or her conduct could be prosecuted under Article 134, but that the conduct was not service-discrediting.

Thus, while I agree with the result in this case, I reach that result in a different manner. As stated earlier, the only question is whether Appellant was fairly on notice that her conduct was service-discrediting within the meaning of Article 134. See United States v. Sullivan, 42 M.J. 360, 366 (C.A.A.F. 1995)(whether reasonable officer would know his conduct was service-discrediting); United States v. Guerrero, 33 M.J. 295, 297 (C.M.A. 1991) ("appellant was on notice that conduct which . . . brings discredit upon the Navy is an offense under Article 134.").

To answer that question, it is important first to note that the inquiry is an objective one. It is not whether Appellant was on notice that conduct like hers was service-discrediting under Article 134, but rather, whether a reasonable enlisted person would be on notice that conduct like Appellant's was service-discrediting and, therefore, was punishable under Article 134. See Sullivan, 42 M.J. at

4

366 (whether "reasonable officer" knew the conduct was service-discrediting under Article 134); United States v. Hartwig, 39 M.J. 125, 130 (C.M.A. 1994)("Any reasonable officer would recognize that [the conduct in issue] would risk bringing disrepute upon himself and his profession," in violation of Article 133, UCMJ, 10 U.S.C. § 933.) (emphasis added); United States v. Frazier, 34 M.J. 194, 198-99 (C.M.A. 1992)("a reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer")(emphasis added & footnote omitted).

Whether a reasonable enlisted person would know that conduct like Appellant's was service-discrediting within the meaning of Article 134 depends on what "service-discrediting" means. It means "conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." Manual for Courts-Martial, supra at Part IV, para. 60.c.(3).

As a result, the question finally becomes: Would a reasonable enlisted person fairly be on notice that conduct such as Appellant's could be punished under Article 134 as tending to bring the service into disrepute or lower it in public esteem? The answer to that is yes, for all the

reasons cited by majority, and also because this Court

already has stated:

> Article 134 would appear to encompass two general classes of conduct: First, that which is or generally has been recognized as illegal under the common law or under most statutory criminal codes; and, second, that which – however eccentric or unusual – would not be viewed as criminal outside the military context. The former category is prejudicial to good order and discipline or is service-discrediting for the very reason that it <u>is</u> (or has been) generally recognized as illegal; such activity, by its unlawful nature, tends to prejudice good order or to discredit the service. On the other hand, the latter category is illegal solely because, <u>in the military context, its effect</u> is to prejudice good order or to discredit the service.

United States v. Davis, 26 M.J. 445, 448 (C.M.A. 1988).

See also United States v. Foster, 40 M.J. 140, 143 (C.M.A.

1994)("enumerated articles [of the UCMJ] are rooted in the

principle that such conduct per se is either prejudicial to

good order and discipline or brings discredit to the armed

forces"). Appellant's conduct clearly falls into the

category of "generally recognized illegal" conduct and is,

therefore, per se service-discrediting.