# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MARCELL T. BUNCH**
**United States Army, Appellant**

ARMY 20160197

Headquarters, United States Army Maneuver Center of Excellence
Richard J. Henry, Military Judge
Colonel Wendy P. Daknis, Staff Judge Advocate

For Appellant: Captain Daniel C. Kim, JA (argued); Lieutenant Colonel Melissa R. Covolesky, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief); Colonel Mary J. Bradley, JA; Major Patrick J. Scudieri, JA; Captain Matthew L. Jalandoni, JA (on brief in response to specified issues).

For Appellee: Captain Jonathan S. Reiner, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Anne C. Hsieh, JA; Lieutenant Colonel Diana Kane, JA (on brief); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie, III, JA; Major Anne C. Hsieh, JA; Captain Jonathan S. Reiner, JA (on brief in response to specified issues).

13 July 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

We hold that the military judge did not err in accepting appellant's guilty plea because appellant's photographing his sleeping seven-year-old stepdaughter's underwear-clad buttocks constitutes a wrongful visual recording under Article 120c(a)(2), Uniform Code of Military Justice, 10 U.S.C. § 920c (2012) [hereinafter UCMJ].

A military judge sitting as general court-martial convicted appellant, pursuant to his pleas, of absence without leave, sexual abuse of a child, wrongful visual recording of a private area, and production of child pornography, in violation of

Articles 86, 120b, 120c, and 134 UCMJ. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three years, and reduction to the grade of E-1.

This case is before us for review pursuant to Article 66, UCMJ.[1] Appellant raises one assignment of error, which merits neither discussion nor relief. Appellant also raises issues pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982), which we find lack merit. This court specified three additional issues: whether the military judge abused his discretion by accepting appellant's plea of guilty to indecent visual recording under Article 120(c)(a)(2), UCMJ; what is the extent of a seven-year old step-daughter's reasonable expectation of privacy from her stepfather while sleeping with him in a common area of a friend's house; and whether Article 120(c)(a)(2), UCMJ is constitutionally overbroad or vague.

## BACKGROUND

In August 2015, appellant's wife found photographs of her seven-year-old daughter, ZC, in appellant's Google Drive photo album. At the time, appellant was ZC's stepfather. One photograph was explicitly child pornography. The other photographs do not constitute child pornography; however, they are close-up pictures of ZC's clothed buttocks.

With regard to the one photograph that is child pornography, appellant admitted taking the photograph while he, his wife, and ZC were sleeping in the same bed. In that instance, appellant awoke sexually aroused during the night and felt his stepdaughter's hand in the vicinity of his genitalia. Appellant slid his shorts down, exposing his genitals, and placed the child's hand on his erect penis. As ZC slept, appellant photographed ZC's hand involuntarily holding appellant's penis. For taking this photograph, appellant was charged with, and pleaded guilty to, production of child pornography under Article 134, UCMJ.

With regard to the close-up photographs of ZC's underwear-clad buttocks, these photos were taken on a separate occasion during a visit to a family friend's home in West Virginia. During the night, ZC, wearing only a t-shirt and underwear, left the room she was sleeping in and came into the living room to sleep with appellant on the couch. ZC fell asleep atop appellant. Appellant awoke in middle of the night to find ZC laying on top of his legs with her body lying in the opposite direction of appellant's body. Appellant's view was directly looking at his stepdaughter's underwear-clad buttocks. Appellant stated he "thought it was a nice view" so he photographed her buttocks. Appellant adjusted his leg. ZC shifted in her sleep and raised her buttocks. Appellant photographed her clothed buttocks again as she laid astride appellant's leg. In the stipulation of fact, appellant admitted to being sexually aroused after taking these pictures.

---

[1] This court heard oral argument in this case on 22 June 2017.

As a result of taking these photographs on this occasion, appellant was charged with, and pleaded guilty to, violating Article 120c, UCMJ:

> [i]n that [appellant], U.S. Army, did at or near Beckley, West Virginia, between on or about 1 October 2014 and on or about 30 November 2014, knowingly and wrongfully photograph the private area of Z.C., without her consent and under circumstances in which she had a reasonable expectation of privacy.

During the providence inquiry, appellant told the military judge that he intentionally photographed ZC's underwear-clad buttocks while she slept and that she did not, and could not due to her age, consent to being photographed in this manner. Appellant said that ZC had a reasonable expectation of privacy because a child sleeping with her stepfather would believe that her private area would not be photographed in this way, and that his conduct was wrongful because he did not have legal justification or lawful authorization to take such photos.

## LAW AND ANALYSIS

### *Standard of Review*

We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (internal citation omitted). In reviewing a military judge's decision to accept a guilty plea, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, which would raise a substantial question regarding the appellant's guilty plea. *Unites States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (internal citation omitted).

### *Article 120c(a)(2), UCMJ*

Article 120c(a)(2), UCMJ, prohibits a visual recording if, without legal justification or lawful authorization, one knowingly photographs, videotapes, films, or records by any means the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy. *Manual for Courts-Martial*, *United States*, (2012 ed.) [hereinafter *MCM*], Part IV, ¶ 45c(a)(a)(2). See also Dep't of Army Pam. 27-9, Legal Services: Military Judges' Benchbook, para 3-45c-1.c(1) (10 September 2014).[2]

---

[2] As background, the statutory offense of Indecent Act under Article 120(k), UCMJ, applicable to appellant's offenses committed during the period 1 October 2007 through 27 June 2012 was replaced in large part by Article 120c, UCMJ, applicable

(continued . . . )

3

Article 120c(d)(2), UCMJ, defines "private area" as the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple; *MCM*, Part IV, ¶ 45c(a)(c)(c)(2). Article 120c, UCMJ, further defines the term "under circumstances in which that other person has a reasonable expectation of privacy," as:

> (A) circumstances in which a reasonable person would believe that he or she could disrobe in privacy, without being concerned that an image of a private area of the person was being captured; or

> (B) circumstances in which a reasonable person would believe that a private area of the person would not be visible to the public.

UCMJ art. 120c(d)(3)(A) and (B); *MCM*, Part IV, ¶ 45c(c)(3)(A) and (B). By enacting this provision of the UCMJ, Congress recognized an expectation of privacy in the private areas of a person's body consistent with what has historically been recognized through widely accepted social norms. *United States v. Raines*, NMCCA 201400027, 2014 CCA LEXIS 600, at *12-13 (N.M. Ct. Crim. App. 2014).

---

(. . . continued)
to the offenses committed after 27 June 2012. *See MCM*, App. 23 at A23-16. The offense under Article 120(k), UCMJ, stated any person subject to this chapter who engages in indecent conduct is guilty of an indecent act and shall be punished as a court-martial may direct. Article 120(t)(12), UCMJ, defined indecent conduct as

> that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. Indecent conduct includes observing, or making a videotape, photograph, motion picture, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material, without another person's consent, and contrary to that other person's reasonable expectation of privacy, of:

> (A) that other person's genitalia, anus, or buttocks, or (if that other person is female) that person's areola or nipple; or

> (B) that other person while that other person is engaged in a sexual act, sodomy under Article 125, UCMJ, or sexual contact. *MCM* (2007 ed.), Part IV, ¶ 45(a)(t)(12).

4

In the context of adult victims, the current statute is easier to apply and hinges in large part on the factual determination of the victim's reasonable expectation of privacy and whether there was consent to the photographing. Application of the statute becomes less straight-forward when applied to parents who photograph their own underwear-clad minor children, which is not an uncommon occurrence. One need only look in the public domain at such images as underwear advertisements for children or family-posted photographs of their infant children on social media sites. The issue of consent is difficult to reliably address in a situation in which a parent can, and does in many circumstances, consent on behalf of their child. The issue of a child's reasonable and actual expectation of privacy from their own parents is also difficult to apply.

*Due Process*

The Due Process Clause of the Fifth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). A parent's interest in the "care, custody, and control of [his] children -- is perhaps the oldest of the fundamental liberty interests recognized" by the Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000).[3]

Embedded in this interest is the presumption that parents act in their children's own best interest, with the burden of proof on the government to prove otherwise. *United States v. Parham*, 442 U.S. 584, 602 (1979). As the Supreme

---

[3] *See, e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923) ("the right of the individual to . . . establish a home and bring up children"); *Pierce v. Society of Sisters*, 268 U.S. 510, 534 (1925) ("the liberty of parents and guardians to direct the upbringing and education of children under their control"); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The private interest . . . of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'"); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("the relationship between parent and child is constitutionally protected"); *Parham v. J. R.*, 442 U.S. at 602 ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children".); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("[T]his Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment.").

Court explained in *Parham*, "[t]he law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions," and "historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children." *Id*. at 602 (internal citations omitted). Accordingly, so long as a parent adequately cares for his children, the Due Process Clause does not permit the government to infringe on his fundamental right to make childrearing decisions simply because the government believes a "better" decision could be made. *Troxel*, 530 U.S. at 72-73.

Parental liberty interests, however, are not absolute. While the Constitution protects the parent-child relationship from arbitrary infringement by the State, the Supreme Court has emphasized that this relationship does not "establish a rigid constitutional shield, protecting every arbitrary parental decision from any challenge absent a threshold finding of harm." *Id*. at 86 (Stevens, J., dissenting). "The presumption that parental decisions generally serve the best interests of their children is sound, and clearly in the normal case the parent's interest is paramount. But, even a fit parent is capable of treating a child like a mere possession." *Id*.

Limitations on parental liberty interests arise from the child's own interests in preserving his or her fundamental rights. *See Planned Parenthood v. Danforth*, 428 U.S. 52, 74 (1976) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."). When the presumption that a parent acts in his child's interest is rebutted, the parent may no longer possesses the constitutional protection of his liberty interest as a parent.

While there may be issues raised by the statute when applied to minor children and their parents, here appellant pleaded guilty and admitted to the following: his stepdaughter had a reasonable expectation of privacy in not having her underwear-clad buttocks photographed; under the circumstances, he violated her privacy; and his conduct was done without legal justification or authorization. By pleading guilty, appellant did more than admit he did the various acts alleged in the specification; he knowingly and intelligently admitted guilt of a substantive crime. *See United States v. Campbell*, 68 M.J. 217, 219 (C.A.A.F. 2009) (citing *United States v. Broce*, 488 U.S. 563, 570 (1989)) (internal quotations omitted). "An unconditional guilty plea generally waives all pretrial and trial defects that are not jurisdictional nor a deprivation of due process of law." *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) (internal citation omitted). We do not find the application of this statute under these circumstances to constitute arbitrary government infringement on a parent-child relationship. Under the facts of this case, appellant essentially admitted he was not acting in the best interests of the child when he took the photographs without legal justification or authorization. Based on his own admissions, he exceeded the constitutional protection of his liberty

interests as a parent and the photos were unrelated to his parental duties and obligations. The photographs themselves and how they were framed—namely zoomed-in pictures of ZC's underwear clad buttocks—give context and perspective to appellant's actions. Appellant admitted to having no lawful authorized purpose in taking the photographs.

Reviewing for abuse of discretion, we find the military judge did not abuse his discretion by accepting appellant's guilty plea.

### *Unconstitutional Vagueness and Overbreadth*

We review de novo constitutional challenges to Article 120(c), UCMJ. *See United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). Prior to reaching the merits of the issues, however, we consider whether the appellant forfeited and perhaps waived his constitutional claims by failing to raise them at trial. Under the circumstances of this case, we find that he has at least forfeited his claim and, accordingly, we at most review his claims for plain error. In our plain error review, we will grant relief "only where (1) there was error, (2) the error was plain and obvious, and (3) that error materially prejudiced a substantial right of the [appellant]." *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011).

The Sixth Amendment to the Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." Fairness requires appropriate notice that the act would be criminal. The Due Process Clause of the Fifth Amendment also demands that a statute not be so vague or overbroad that one cannot determine its meaning. *See, e.g.*, *United States v. Boyett*, 42 M.J. 150, 152 (C.A.A.F. 1995). This is especially true when viewed in light of First Amendment protections.

In statutory construction cases, we begin with the language of the statute. *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (*quoting Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002)). The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. *Id*. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Id*.

To withstand a vagueness challenge, a statute must provide sufficient notice so that a servicemember can reasonably understand that his conduct is proscribed. *United States v. Moore*, 58 M.J. 466, 469 (C.A.A.F. 2003) (*citing Parker v. Levy*, 417 U.S. 733, 757 (1974)); *see also United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (holding due process requires fair notice that an act is forbidden and subject to criminal sanction). To determine whether a statute "clearly applies" and provides fair notice of the proscribed conduct, we consider not only its plain language, but also other sources, including the "MCM . . . military case law, military custom and usage, and military regulations." *Vaughan*, 58 M.J. at 31 (internal citations omitted). In determining the sufficiency of notice, "a statute must of

necessity be examined in the light of the conduct with which the defendant is charged." *Parker*, 417 U.S. at 757; *see also United States v. Mazurie*, 419 U.S. 544 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.").

Appellant argues it is unclear what conduct is criminalized under this statute when a parent, or in this case a step-parent, photographs his child in a seemingly "innocuous setting." Specifically, appellant argues the terms "reasonable expectation of privacy," "underwear-clad private area," and "without consent" are vague as applied to parents and their own children. Under the facts before us, appellant's arguments are not persuasive. Appellant's admission of each of these elements and his admission that he was sexually aroused by the sight of ZC's underwear-clad buttocks undercut his argument that he did not have "fair notice of what is prohibited." *United States v. Williams*, 553 U.S. 285, 303 (2008). We reject the appellant's challenge to Article 120c(a)(2), UCMJ, on vagueness grounds.

The overbreadth doctrine articulated by the Supreme Court is an outgrowth of the First Amendment. *See Williams*, 553 U.S. at 292. A statute is overbroad if "it prohibits a substantial amount of protected speech . . . relative to [its] plainly legitimate sweep." *Id*. (internal citations omitted). The Supreme Court has severely limited the overbreadth doctrine's applicability and "employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982) (*quoting Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). Additionally, the general rule of the overbreadth doctrine holds that a person "may not challenge [the] statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Id*. at 767 (internal citations omitted).

While we can envision issues associated with the application of the Article 120c(a)(2), UCMJ, under other circumstances in which a parent photographs his or her own child, we save for another day the issue of overbreadth. Appellant does not argue, nor, given his plea of guilty, do the facts of this case support, that Article 120c(a)(2), UCMJ, casts a net over otherwise innocent or lawful conduct.

**CONCLUSION**

Findings and sentencing are AFFIRMED.

Judge HERRING and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court