# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, K.M. MCDONALD, M.K. JAMISON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**GREGORY T. MILES**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201300272**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 4 April 2013.
**Military Judge**: LtCol Eugene H. Robinson, Jr., USMC.
**Convening Authority**: Commanding General, III Marine Expeditionary Force, Okinawa, Japan.
**Staff Judge Advocate's Recommendation**: Col J.R. Woodworth, USMC.
**For Appellant**: LT Jared A. Hernandez, JAGC, USN; LT Jennifer Myers, JAGC, USN.
**For Appellee**: Maj David N. Roberts, USMC; LCDR Keith B. Lofland, JAGC, USN.
**For Amicus Curiae**: Mr. Richard O. Cunningham, Esq.

**21 August 2014**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

JAMISON, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of two specifications each of attempted sodomy, indecent acts, and

adultery in violation of Articles 80, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920, and 934. The military judge sentenced the appellant to reduction to pay grade E-1, forfeiture of all pay and allowances, confinement for a period of 12 months, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.[1]

The appellant raises five assignments of error (AOE). In his first AOE, the appellant argues that the Government's decision to charge him with sodomy and indecent acts represented an unreasonable multiplication of charges. In his second AOE, the appellant argues that Article 120(k) is unconstitutionally vague both facially and as-applied to the facts of his case. Additionally, the appellant argues that Article 120(k) is unconstitutionally overbroad. In his third AOE, the appellant makes a constitutional due process challenge to Article 120(k), arguing that his sexual conduct was not indecent as a matter of law. In his fourth and fifth AOE, the appellant argues that Article 125 is unconstitutionally vague and overbroad, and that his conviction for attempted sodomy violated his constitutional due process rights.

After consideration of the pleadings of the parties, the *Amicus Curiae* submission[2] and the record of trial, we conclude that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## I. Factual and Procedural Background

Lance Corporal (LCpl) KS had planned a "girls-night-out" with one of her close friends, Mrs. BC (BC), for 3 February 2012. LCpl KS worked with BC's husband, LCpl NC, and had met BC through him. Mrs. ED (ED), who LCpl KS had met through BC, rounded out the trio. Because BC and ED lived on installations geographically separated from Camp Hansen (where LCpl KS resided), they decided that BC and ED would spend the night in LCpl KS's barracks room after a night on the town. One of the reasons LCpl KS decided to have a "girls-night-out" was to cheer up BC, who had recently suffered a miscarriage.

---

[1] At the request of the appellant in his clemency petition, the CA suspended confinement in excess of six months.

[2] We granted the National Coalition for Sexual Freedom's motion to file a brief as Amicus Curiae. NMCCA Court Order of 25 Mar 2014.

On the evening of 3 February 2012, LCpl KS, BC, and ED left Camp Hansen to go to Kin Town.  They stayed in Kin Town for approximately four hours and all three women had several drinks.  The women returned to Camp Hansen and went to The Palms, an on-base club.  While at The Palms, BC, misplaced her identification card (ID).  The appellant was also at The Palms and helped BC try to locate her ID.  BC eventually found her ID in the bathroom.  The women continued to drink.[3]  The appellant began talking to BC and ED, and he exchanged phone numbers with ED.  ED testified that she gave the appellant her phone number because she was new to Okinawa and wanted to expand her circle of friends.  Both women testified that they told the appellant that they were married.

While on the dance floor at The Palms, one of the bouncers determined that BC was underage and she was escorted out of the club.  BC's husband was contacted, drove to The Palms, and he and BC decided that BC should spend the night with ED and LCpl KS as planned.

The women walked over to LCpl KS's barracks and spent some time in the smoke pit talking with a group of male and female Marines.  LCpl KS consulted the barracks duty non-commissioned officer to inform him that BC and ED would be spending the night in her barracks room.  Record at 57-58.  At approximately 0211 on the morning of 4 February 2012, the appellant began sending a series of text messages to ED indicating his desire to see her that night.  Prosecution Exhibit 12.  ED responded via text that she was staying in barracks building number 2610 and that she was outside.  *Id*.  At some point, the appellant arrived and joined the group of Marines.  The appellant had changed into his uniform.

After spending some time socializing at the smoke pit and also in the barracks multi-purpose room, the group broke up and LCpl KS, BC, and ED started walking to LCpl KS's room.  The appellant followed the three women.  All of the women denied having invited the appellant to LCpl KS's room.  LCpl KS testified that she was slightly uncomfortable and asked the appellant if he was going to leave.  According to LCpl KS, the appellant said that he needed a place to sleep and did not want to walk back to the other side of the installation.  LCpl KS

---

[3] All three women testified that they were intoxicated towards the end of the night.  LCpl KS testified that on a scale from 1 to 10, 10 being passed out drunk, she estimated she was at level 7.  Record at 54.  ED estimated her level of intoxication to be 9.5.  *Id*. at 84.  BC estimated her level at 4.  *Id*. at 109.

prepared sleeping bags for the appellant and for herself.  LCpl KS put her sleeping bag beside her bed and placed the other sleeping bag at the foot of her bed.  Earlier that evening, LCpl KS had decided that she would sleep on the floor while BC and ED would sleep in her bed.

At some point, the appellant got out of the sleeping bag and made his way to the bed.  BC testified that she woke up and the appellant's hands were down her shorts and that he was grabbing her buttocks and rubbing her vagina.  BC testified that she went to sleep with a tampon, but when she was awakened by the appellant's fondling, the tampon was gone.[4]

When BC woke up and realized what was happening, she hurried down to LCpl TC's barracks room on the second deck.  LCpl TC was her husband's best friend.  According to LCpl TC, BC was frantic and asked for his help in getting the appellant out of LCpl KS's barracks room.  LCpl TC testified that when he arrived at LCpl KS's room he saw LCpl KS on the floor asleep in her sleeping bag; the appellant was awake in the bed stroking ED's arm while she appeared to be asleep.  *Id*. at 160.  ED testified that she had no recollection of any sexual acts committed by the appellant.

Following BC's complaint, agents from the Naval Criminal Investigative Service interrogated the appellant.  The appellant admitted to digitally penetrating ED's vagina and anus.  PE 14.  He also admitted to penetrating BC's vagina, touching her anus with his penis, touching her buttocks, and digitally penetrating her vagina and anus.  The appellant also admitted that he tried to penetrate ED's and BC's anuses with his penis, but was unable to do so because he was unable to achieve an erection.

The Government preferred the following charges against the appellant:  false official statement; aggravated sexual assault of BC; abusive sexual contact of BC; wrongful sexual contact of BC; two specifications of indecent acts with BC and ED; sodomy of BC and ED; and, adultery with BC and ED.

Following a trial on the merits, the military judge made special findings pursuant to Rule for Courts-Martial 918(b), Manual for Courts-Martial, United States (2012 ed.).  *Id*. at 236-43.  The military judge acquitted the appellant of making a false official statement, aggravated sexual assault, abusive sexual

---

[4] Subsequent testing of the tampon string revealed touch DNA left that matched the appellant's DNA.

contact, and wrongful sexual contact. He found the appellant guilty by exceptions and substitutions of committing indecent acts with BC and ED. He acquitted the appellant of sodomy, but found him guilty of the lesser included offense of attempted sodomy. Finally, the military judge found the appellant guilty of adultery for wrongfully having sexual intercourse with ED and BC.

With regard to his reasoning behind the conviction for indecent acts under Article 120(k), UCMJ, the military judge concluded that the acts were indecent because they were "open and notorious" in that there was a "substantial risk that the acts could be witnessed by someone else." *Id*. at 237. Additionally, the military judge made special findings as to his rationale why the appellant's adulterous conduct was both service discrediting and prejudicial to good order and discipline.[5]

## II. Unreasonable Multiplication of Charges

The appellant argues that the Government's decision to charge him with indecent acts and sodomy represented an unreasonable multiplication of charges (UMC). We disagree.

We review UMC claims under an abuse of discretion standard. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citing *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004) (additional citation omitted). In determining whether UMC exists, we consider five factors: (1) did the appellant object at trial; (2) are the charges aimed at distinctly separate criminal acts; (3) do the charges misrepresent or exaggerate the acts; (4) do the charges unreasonably increase the appellant's punitive exposure; and, (5) is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges and specifications? *United States v. Quiroz*, 57 M.J. 583, 585-86 (N.M.Ct.Crim.App. 2002) (*en banc*), *aff'd*, 58 M.J. 183 (C.A.A.F. 2003) (summary disposition).

---

[5] Specifically, the military judge found that the adulterous conduct was service discrediting due, *inter alia*, to its "open and notorious" nature. Record at 241. The military judge concluded that the adultery was prejudicial to good order and discipline and service discrediting based on the following non-exclusive circumstances: the marital status of BC and ED and their relationship to the Marine Corps; the military status of BC's and ED's respective spouses; the misuse of the barracks to commit adultery; the fact that other UCMJ violations took place during the adulterous conduct and the location of this conduct: "in another Marine's [barrack's] room and in a foreign country." *Id*.

Because the appellant did not object at trial, the first *Quiroz* factor weighs in favor of the Government. The appellant concedes this. We find that the second and third factors weigh slightly against the appellant since the two offense were primarily aimed at different criminal acts -- the sodomy specifications were aimed at addressing the appellant's alleged penile penetration of ED's and BC's anuses, whereas the indecent act specifications alleged separate sexual misconduct by the appellant to include digital penetration and other sexual acts. With regard to BC, the appellant was charged with digital penetration of her vagina and anus, as well as touching BC's vagina and buttocks. With regard to ED, the appellant was charged with penetrating her vagina with his penis and rubbing her breasts and vagina. Even though there was some overlap between the sodomy offenses and indecent act offenses, this charging scheme does not misrepresent or unreasonably exaggerate the appellant's criminality. *See United States v. Paxton*, 64 M.J. 484, 491 (C.A.A.F. 2007) (holding that within the context of a continuing course of conduct indecent act of touching breasts and genitals was separately chargeable from offense of rape and sodomy and did not constitute UMC).

The fourth factor also weighs against the appellant because the military judge's findings served to eliminate almost all the overlap in conduct. The military judge found the appellant guilty of indecent acts by exceptions and substitutions. With regard to the specification alleging an indecent act with ED, the military excepted the following language: "penetrating the vagina and anus with his penis" and substituted the following: "digitally penetrating the vagina and anus." Record at 235. Thus, any overlap with the sodomy charge was completely eliminated. Although the specification alleging an indecent act with BC contained overlap with the attempted sodomy of BC, we do not believe that the appellant's punitive exposure was unreasonably exaggerated. In this case, the military judge was the sentencing authority. Thus, we conclude that any overlap in conduct did not subject the appellant to an unreasonable increase in punitive exposure, because we presume that in adjudging an appropriate sentence the military judge considered the charges and specifications in their proper light.

The fifth factor also weighs against the appellant. There is no evidence of prosecutorial overreaching or abuse in the drafting and charging of indecent acts and sodomy offenses. On balance, we find that the *Quiroz* factors weigh against the appellant.

6

### III. Constitutional Challenges to Article 120(k)

In AOE II and III, the appellant, for the first time on appeal, makes a broad-based constitutional attack on Article 120(k), UCMJ. In AOE II, he argues that Article 120(k) is void-for-vagueness and unconstitutionally overbroad. In AOE III, while unfocused, the appellant makes essentially a due process argument that as-applied to the facts of his case, his convictions for indecent acts are unconstitutional. Because his constitutional attacks on Article 120(k) in both AOEs are linked, we consider each argument in turn.

We review *de novo* the appellant's various constitutional challenges to Article 120(k). *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). Prior to reaching the merits of his arguments, however, we consider whether the appellant forfeited his constitutional claims by failing to raise them at trial. Under the circumstances of this case, we find that he has and, accordingly, we review his claims for plain error.[6] *See United States v. Howard*, 72 M.J. 406 (C.A.A.F. 2013) (summary disposition) (holding that Howard's Article 120(k) due process claim for having sexual relations in the presence of others was forfeited); *see also Goings*, 72 M.J. at 205 (concluding that *Goings's* as-applied due process challenge to the constitutionality of indecent acts under Article 134 was forfeited by his failure to raise the issue and develop facts at trial). We turn our attention now to the appellant's vagueness challenge to Article 120(k).

### A. Facial Vagueness Challenge to Article 120(k)

The appellant argues that Article 120(k) is constitutionally infirm on vagueness grounds. The thrust of his vagueness argument surrounds Congress's 2007 enactment of Article 120(k). He argues that when Congress enacted the statutory offense of indecent acts in Article 120(k) without the terminal element of the preexisting Article 134 offense, it is now unclear what actual conduct remains "indecent" and punishable.

To make a constitutional challenge on facial vagueness grounds within the military context, an appellant must first have standing. If the appellant's "conduct [under the] statute

---

[6] Within the context of our plain error review, we will grant relief "only where: (1) there was error; (2) the error was plain and obvious; and, (3) that error materially prejudiced a substantial right of the [appellant]." *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011).

clearly applies [he] may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974); *see also United States v. McGuinness*, 35 M.J. 149, 152 (C.M.A. 1992) ("If appellant is . . . one to whom the statute clearly applies, he has no standing to challenge successfully the statute under which he is charged") (citations and internal quotation marks omitted)). To determine whether a statute "clearly applies" and provides fair notice of the proscribed conduct, we consider not only the plain language of the statute, but also other sources, including the "[Manual for Courts-Martial] . . . military case law, military custom and usage, and military regulations." *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citations omitted).

Based on the plain text of Article 120(k), UCMJ, as further defined in the MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and interpreted by our superior court, we find that service members of ordinary intelligence have "fair notice of what is prohibited." *United States v. Williams*, 553 U.S. 285, 304 (2008). Additionally, we find that Article 120(k) is not so "standardless that it authorizes or encourages seriously discriminatory enforcement." *Id*. (citations omitted). Accordingly, we reject the appellant's facial challenge to Article 120(k) on vagueness grounds. We move next to the appellant's vagueness challenge "as-applied" to the facts of his case.[7]

## B. As-Applied Vagueness Challenge to Article 120(k)

In 2007, Congress significantly overhauled various sexual crimes within the military. Indecent acts with another, previously recognized as an offense under Article 134, UMCJ, is now subject to prosecution under Article 120(k), UCMJ, as an indecent act. *See* MCM (2008 ed.), App. 23 at A23-15. Congress imported the President's long-standing definition of "indecent" in ¶ 90c in Part IV of the MCM (2005 ed.) into the statutory definition of "indecent."[8]

---

[7] Although AOE II is styled as a constitutional challenge on facial vagueness grounds, the appellant's brief contains within the AOE an as-applied vagueness challenge. Appellant's Brief of 16 Dec 2013 at 25-26. We interpret the appellant's AOE to include an as-applied vagueness challenge.

[8] Article 120(t)(12) provides that "[t]he term 'indecent conduct' means that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations."

The elements of an indecent act under Article 120(k) are: (a) that the accused engaged in certain conduct; and (b) that the conduct was indecent. MCM (2008 ed.), Part IV, ¶ 45b(11). The legislative history demonstrates that the term "indecent" in Article 120(t)(12) is "the same conduct that has been held to be indecent by military appellate courts" in the past. *See* Sex Crimes and the UCMJ: A Report for the Joint Service Committee on Military Justice, 261 (2005). While the definition of "indecent conduct" in Article 120(t)(12), UCMJ, is slightly different than the definition of "indecent" in MCM (2005 ed.), Part IV, ¶ 90c, the differences are insignificant.[9]

In this case, the military judge convicted the appellant of indecent acts under Article 120(k) on the theory that it was committed in an "open and notorious" manner. Record at 237. The appellant does not take issue with our superior court's prior cases that interpreted indecent acts under Article 134; however, he argues that when Congress enacted Article 120(k) without adding the terminal element from the Article 134, UCMJ, version of indecent acts, the statutory offense of committing an indecent act lost its preexisting legal standard. From this the appellant argues that the preexisting case law of our superior court is inapplicable. We disagree.

First, our superior court interpreted the President's definition of "indecent" for purposes of defining sexual activity as opposed to interpreting the terminal element. In *United States v. Berry*, 20 C.M.R. 325 (C.M.A. 1956), the Court of Military Appeals held that Article 134, UMCJ, was not "intended to regulate the wholly private moral conduct of an individual[;] [however, fornication] committed "openly and notoriously" was punishable under Article 134. 20 C.M.R. at 330 (citing CJS, Fornication, § 2a, page 119; 1 Am Jur, Adultery, § 13, page 687). Forty-three years later, the Court of Appeals for the Armed Forces (CAAF) re-affirmed this principle. *See United States v. Izquierdo*, 51 M.J. 421, 422 (C.A.A.F. 1999) (stating that "[w]e have consistently held that fornication, when committed 'openly and notoriously,' is an 'aggravating circumstance[] sufficient to state an offense under Article 134.") (citations omitted)). In 2013, the CAAF reiterated this principle by stating the following: "private consensual sexual activity is not punishable as an indecent act absent aggravating circumstances[; however a clear] aggravating circumstance is

---

[9] *See* MCM, Part IV, ¶ 90c (2005 ed.): "'Indecent' signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations."

that the sexual activity is open and notorious." *Goings*, 72 M.J. at 205.

Second, the CAAF has already analyzed a conviction under Article 120(k) in terms of whether the sexual activity was "open and notorious." *See Howard*, 72 M.J. at 406 (holding that conduct charged under Article 120(k), UMCJ, was not plainly "private" when the sexual activity "occurred while in the presence of two additional servicemembers"); *see also United States v. Elhelou*, 72 M.J. 404 (C.A.A.F. 2013) (summary disposition) (finding Elhelou's pleas provident when the military judge explained that "'open and notorious' sexual activity is punishable as an indecent act, in violation of Article 120(k)"); *cf. United States v. Tunstall*, 72 M.J. 191, 196 n.6 (C.A.A.F. 2013) (setting aside an Article 120(k) conviction but suggesting that notice of the alternative theory "open and notorious" conduct could have sustained the conviction).

We find no reason why sexual activity committed in an "open and notorious" manner that is clearly applicable to indecent acts under Article 134 should not apply with equal force within the context of charged sexual activity under Article 120(k).

To propound his vagueness claim, the appellant provides various hypotheticals that may subject a would-be accused to a charge of indecent acts. For example, the appellant argues that a hypothetical CA's strongly held religious beliefs may cause him to charge a hypothetical accused with committing an indecent act under Article 120(k) for having premarital sex. Appellant's Brief at 22-23. Even if the appellant's hypotheticals seek to test the outer limits of the statutory definition of indecent acts, this matter "is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 306 (citing *In re Winship*, 397 U.S. 358, 363 (1970)). Because the appellant's conduct -- sexual activity conducted "openly and notoriously" -- is, and has long been, proscribed conduct under military law, he "cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (citation and internal quotation marks omitted).

Because he did not raise his constitutional vagueness claim at trial, he forfeited his claim and he has not come close to establishing error, let along plain and obvious error. Accordingly, we reject the appellant's as-applied vagueness

challenge and move next to the appellant's constitutional overbreadth challenge.

### C. Overbreadth Challenge to Article 120(k)

Next, the appellant argues that Article 120(k) is unconstitutionally overbroad.  We disagree.

The overbreadth doctrine articulated by the Supreme Court is an outgrowth of the First Amendment.  *See Williams*, 553 U.S. at 292.  A statute is overbroad if "it prohibits a substantial amount of protected speech . . . relative to [its] plainly legitimate sweep."  *Id.* (citations omitted).  The Supreme Court has severely limited the overbreadth doctrine's applicability and "employed it with hesitation, and then 'only as a last resort.'"  *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).  Additionally, the general rule of the overbreadth doctrine holds that a person "may not challenge [the] statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court."  *Id.* at 767 (citations omitted).  Finally, application of First Amendment principles outlined within the Court's overbreadth doctrine sufficient for standing "must be accorded a good deal less weight in the military context."  *Levy*, 417 U.S. at 760.

We believe that there is a wide range of indecent conduct that can be applied to Article 120(k) that is within the statute's "plainly legitimate sweep."  *Broadrick*, 413 U.S. at 615.  The appellant does not contest this fact.  Instead, he argues that Article 120(k) is susceptible to situations in which the statute proscribes "both protected and criminal conduct."  Appellant's Brief at 29.  Additionally, he argues that once Congress enacted Article 120(k) and moved it from Article 134, this eliminated the preexisting requirement to prove the terminal element and now Article 120(k) is susceptible to an interpretation in which "any conduct [is] deemed indecent."  *Id.* at 30.  The appellant's arguments appear to confuse the overbreadth and vagueness doctrines.  The overbreadth doctrine primarily exists to restrict overbroad laws that "deter or 'chill' constitutionally protected speech."  *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).  The appellant does not explain how Article 120(k) deters protected speech.  *See Id.* at 124 (stating that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such and picketing or demonstrating")).  Even assuming the

11

appellant's argument, "[t]he 'mere fact that [the appellant] can conceive of some impermissible applications of [Article 120(k)] is not sufficient to render it susceptible to an overbreadth challenge.'"  *Williams*, 533 U.S. at 303 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).

Because the appellant's challenge concerns "conduct and not merely speech," *Broadrick*, 413 U.S. at 615, and his potential hypotheticals are not applicable to the facts of his case, we find that the appellant lacks standing to challenge Article 120(k) on overbreadth grounds.  *See Levy*, 417 U.S. at 760-61 (suggesting that although some conduct "may lurk on the fringes" of Article 133 and 134 that could be "protected by the *First Amendment*" that is an insufficient reason to extend standing within the military context to Captain Levy's conduct ("urging enlisted personnel to refuse to obey orders which might send them into combat") because the conduct was unprotected "under the most expansive notions of the First Amendment").

Assuming *arguendo* that the appellant has standing to challenge Article 120(k), UCMJ, on overbreadth grounds, we find the appellant's hypotheticals unpersuasive because even if true, his hypotheticals concern only conduct and are at best insubstantial when "judged in relation to [Article 120(k)'s] plainly legitimate sweep."  *Broadrick*, 413 U.S. at 615.  Accordingly, we reject the appellant's constitutional overbreadth challenge and hold that even assuming he has standing that challenge Article 120(k), he has failed in his burden to establish plain error.  We move next to consider the appellant's as-applied due process challenge to Article 120(k).

## D.  As-Applied Due Process Challenge to Article 120(k)

The appellant argues that, because his conduct represented a consensual "threesome," modern mores and contemporary community standards do not consider such conduct either "vulgar, obscene, or repugnant to common propriety."  Appellant's Brief at 32-34.  We disagree with his premise and argument.  We begin with his premise.

Because he was acquitted of the more serious offenses of aggravated sexual contact, abusive sexual contact, and wrongful sexual contact, he extrapolates from that verdict that the sexual acts he committed with BC, the 19-year-old spouse of a Lance Corporal, and ED, the 18-year-old spouse of another fellow Marine, were, in fact, consensual.  This is not necessarily so

12

because "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984).

Viewed in this context, the appellant's constitutional due process attack loses some of its intellectual vigor. Based on our review of the record, we find ample evidence that the appellant's sexual acts with BC and ED do not support the type of wholly private consensual three-way sexual liaison he attempts to portray. Both ED and BC testified that they were not willing participants in the appellant's strawman "consensual threesome." Rather, the facts support that the appellant committed consecutive sexual activity first with BC and then ED.[10]

Even if we were to accept the appellant's underlying premise, his analysis fails to consider that even viewed in the most favorable light to him, this was not a wholly private and discreet sexual liaison. It was committed in another Marine's barracks room while that Marine was sleeping on the floor. It was committed overseas with two married dependent spouses whose husbands were also stationed on Okinawa. *See Levy*, 417 U.S. at 758 (stating that "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it"); *United States v. Priest*, 45 C.M.R. 338, 344 (C.M.A. 1972) (emphasizing that within the military, restrictions exist "that have no counterpart in the civilian community").

We find that the appellant's conduct was clearly committed in an "open and notorious" manner based on the presence of LCpl KS, a non-participant in the appellant's sexual activity. Additionally, the appellant's conduct created a substantial risk it could having been witnessed by others; as to its aftermath, LCpl TC (the best friend of BC's husband) entered LCpl KS's barracks room at BC's insistence, and witnessed the appellant, his trousers undone, stroking ED's arm.[11] Record at 161-62.

---

[10] As part of his interrogation, the appellant stated the following: "[ED] woke up while I was trying to have sex with [BC]." PE 20 at 2.

[11] When BC hurried down to get LCpl TC, he went up to LCpl KS's room and confronted the appellant, saying: "what the f*** are you doing?" Record at 167. While he did not remember the appellant's reply, LCpl TC responded, "I don't care. Get the f*** out of here." *Id.*

13

Because the appellant did not raise his constitutional due process claim at trial, he forfeited his claim and he falls far short of establishing error, let alone plain and obvious error. Accordingly, we reject the appellant's due process challenge.

## IV. Constitutional Challenges to Article 125

In AOEs IV and V, the appellant, for the first time on appeal, makes a broad-based constitutional attack on Article 125, UCMJ. In AOE IV, he argues that Article 125 is void-for-vagueness on its face and unconstitutionally overbroad. Additionally, within AOE IV, he argues that we should revisit our superior court's holding in *United States v. Marcum*[12] based on recent changes in the law. In AOE V, the appellant makes a constitutional vagueness argument as-applied to the facts of his case. Because his constitutional attacks are linked and at times conflated, we consider each argument in turn.

Similar to our constitutional analysis in Part III of our opinion, we review *de novo* the appellant's constitutional challenges to Article 125. *Marcum*, 60 M.J. at 202. Because the appellant raises his constitutional claims for the first time on appeal, our scope of review is limited to a plain error review. *See Goings*, 72 M.J. at 205. Accordingly, we will analyze the appellant's constitutional challenges to Article 125 beginning with his constitutional overbreadth argument.

### A. Overbreadth Challenge to Article 125

We reject the appellant's constitutional overbreadth challenge to Article 125 for the same reasons we rejected his similar challenge Article 120(k); he lacks standing. *See* Part III C, *supra*. Because his conduct of attempted sodomy fits squarely within the constitutional parameters of Article 125, *see* Part IV C, *infra*, he has no standing to argue that the statute "may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick*, 413 U.S. at 610 (citations omitted).

---

[12] In *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004), the CAAF considered Marcum's constitutional due process challenge to Article 125, UCMJ, in light of *Lawrence v. Texas*, 539 U.S. 558 (2003). In *Lawrence*, the Supreme Court declared the Texas sodomy law unconstitutional on due process grounds having found a liberty interest for "two adults who, with full and mutual consent from each other, [to] engage[] in sexual practices common to a homosexual lifestyle." *Lawrence*, 539 U.S. at 578. In *Marcum*, the CAAF conducted a highly contextualized analysis of Article 125 and concluded that it was constitutional on due process grounds "as applied to [Marcum]." *Marcum*, 60 M.J. at 208.

Additionally, the appellant cannot demonstrate plain error because he fails to demonstrate how his conduct warrants the "strong medicine" sufficient to invalidate Article 125 on overbreadth grounds. *See Hicks*, 539 U.S. at 124 ("[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such and picketing or demonstrating")). Because the appellant has failed to meet his burden of establishing plain error, we hold that he forfeited his constitutional challenge to Article 125 on overbreadth grounds.

## B. Facial Vagueness Challenge to Article 125

The appellant challenges the constitutionality of Article 125, UCMJ, as void-for-vagueness, both facially and as-applied. He argues that the statute is constitutionally vague because it fails to provide notice of what conduct is prohibited and it fails to provide standards for law enforcement officials. Appellant's Brief at 44. Additionally, he argues that because of various changes in the law, we should revisit our superior court's holding in *Marcum*, 60 M.J. at 198, to the extent that it upheld the constitutionality of Article 125, UCMJ. We disagree with the appellant's argument and his analysis and we address these arguments in turn.

To succeed on a facial vagueness claim, one must demonstrate that the statute in question is vague "'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Levy*, 417 U.S. at 755 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). In fact, if there is a "'substantial range of conduct' to which an article of the Uniform Code clearly applies, the article's definition of the offense is not fatally deficient, even though an area of uncertainty may remain." *United States v. Scoby*, 5 M.J. 160, 162-63 (C.M.A. 1978) (quoting *Levy*, 417 U.S. at 754-58)).

In *Scoby*, the CAAF's predecessor court analyzed Article 125 and held that it was not unconstitutionally vague on its face. *Scoby*, 5 M.J. at 163; *accord United States v. Henderson*, 32 M.J. 941, 945 (N.M.C.M.R. 1991). In addition to the text of the statute, notice of proscribed conduct may be established "[t]hrough law, regulations, and interpretive material." *Scoby*, 5 M.J. at 162; *see Vaughan*, 58 M.J. at 31 (holding that "fair notice" for purposes of evaluating vagueness claims may include

15

the Manual, "military case law, military custom and usage, and military regulations"); *see also* Article 137, UCMJ (requiring explanation of the UCMJ's punitive articles to every enlisted member upon "initial entrance on active duty;", following completion of "six months of active duty"; and, "when the member reenlists").

Based on the plain language of Article 125, and the holdings of our superior court, we find that service members of ordinary intelligence have "fair notice of what is prohibited." *Williams*, 553 U.S. at 304. Additionally, we find that Article 125 is not so "standardless that it authorizes or encourages seriously discriminatory enforcement." *Id*. (citations omitted).

We reject the appellant's facial challenge because if the statute in question does not infringe on "First Amendment freedoms . . . the vagueness claim must be evaluated as the statute is applied to the facts of th[e] case [in question]." *Chapman v. United States*, 500 U.S. 453, 467 (1991) (citing *United States v. Powell*, 423 U.S. 87, 92 (1975)); *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975) (stating that "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand") (citation omitted)). Accordingly, we reject the appellant's facial challenge to Article 125 on vagueness grounds. We move next to the appellant's vagueness challenge "as-applied" to the facts of his case.

## C. As-Applied Vagueness Challenge to Article 125

In this case, the military judge convicted the appellant of attempted sodomy.[13] Based on the military judge's special findings, it was clear that the attempted sodomy, indecent acts and adultery were committed in an "open and notorious" manner. Record at 239. Not only was ED present when the appellant attempted to sodomize BC and vice versa, but also LCpl KS was in the same room on the floor right next to the bed.

Because the appellant engaged in conduct that was clearly proscribed, he "'cannot complain of the vagueness of the law as

---

[13] Although the appellant was acquitted of sodomy under Article 125, the military judge convicted him of attempted sodomy finding that the appellant had the specific intent to commit sodomy with BC and ED, but due to an "unexpected intervening circumstance" was unable to complete the offense of sodomy. Record at 239.

16

applied to the conduct of others.'" *Humanitarian Law Project*, 561 U.S. at 20 (quoting *Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 495 (1982)). "That rule makes no exception for conduct in the form of speech." *Id*. (citing *Levy*, 417 U.S. at 755-57). Accordingly, we conclude that the appellant has no standing to challenge the constitutionality of Article 125, UCMJ, on an as-applied vagueness grounds. Assuming *arguendo* that the appellant does have standing, we find the appellant's as-applied vagueness argument unpersuasive.

## D. As-Applied Due Process Challenge to Article 125

As part of his void-for-vagueness challenge, the appellant argues that the CAAF's holding in *Marcum* should be revisited based on recent changes in the law.[14] Appellant's Brief at 42. We disagree.

First, the appellant's argument mischaracterizes *Marcum,* because *Marcum* did not analyze Article 125 in terms of vagueness. *Marcum* analyzed Article 125 within the context of whether enforcement of the statute interfered with the zone of liberty interest that the Supreme Court created in *Lawrence v. Texas*, 539 U.S. 558 (2003). *Marcum*, 60 M.J. at 204-05. The holding in *Lawrence* had nothing to do with a challenge on vagueness grounds. Based on the appellant's argument that we revisit *Marcum* based on intervening changes in the law, we believe this argument is more appropriately recast as a constitutional due process argument.

In any event, *Marcum* specifically analyzed the "*Lawrence* zone of liberty"[15] within the military context and held that *Lawrence* compelled an as-applied, contextual analysis. *Id*. at 203-05; s*ee also United States v. Castellano*, 72 M.J. 217, 223 (C.A.A.F. 2013) (holding that *Marcum* factors, which remove sexual activity from *Lawrence* protected interest scope, must be determined by the trier of fact).

---

[14] Specifically, he cites the repeal of 10 U.S.C. § 654 in 2010 as a basis for why the holding in *Marcum* should be revisited. Appellant's Brief at 42.

[15] By quoting *Lawrence*, the CAAF articulated this zone of liberty as setting contextual boundaries, and as such an as-applied analysis was required: "the present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution." *Marcum*, 60 M.J. at 203 (quoting *Lawrence*, 539 U.S. at 578). Contrary to the appellant's apparent argument, *Lawrence* did not hold that sodomy was a fundamental constitutional right. *Id*. at 205.

17

"Under the doctrine of *stare decisis* a decision should not be overruled without examining intervening events, reasonable expectations of servicemembers, and the risk of undermining public confidence in the law." *United States v. Boyett*, 42 M.J. 150, 154 (C.A.A.F. 1995) (citation omitted). The Supreme Court notes that "[e]ven in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." *United States v. International Business Machines Corp.*, 517 U.S. 843, 856 (1996) (citations and internal quotation marks omitted). No such special justification applies here.

The appellant's argument that "times have changed," and that the repeal of 10 U.S.C. § 654 constitutes an intervening event and special justification for revisiting *Marcum*, is without merit. The CAAF did not rely on 10 U.S.C. § 654 for its holding in *Marcum*.[16]

Having rejected the appellant's invitation to revisit *Marcum*, we move next to conduct a *de novo* fact-specific analysis of the appellant's conduct to ascertain whether his conduct falls within the protected liberty interest established by the three-pronged analysis outlined in *Marcum*:

> First, was the conduct that the accused was guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Marcum*, 60 M.J. at 206-07 (internal citation omitted).

In considering the first *Marcum* step, we note that although the Government charged the appellant with various sexual offenses based on a theory of non-consent, it did not charge the appellant with forcible sodomy. This finding, however, does not necessarily support the appellant's underlying premise that his sexual acts with ED and BC represented a freely entered into

---

[16] "Nor, given our determination that Appellant's conduct fell outside the liberty interest identified in *Lawrence*, need we decide what impact, if any, 10 U.S.C. § 654 would have on the constitutionality of Article 125 as applied in other settings." *Marcum*, 60 M.J. at 208.

18

sexual liaison between three willing and consenting adults.  In fact, our review of the record suggests a contrary conclusion. "Unlike *Lawrence*, in which there was no evidence of force whatsoever," *id*. at 214 (Crawford, C.J., concurring in the result), the facts in this case do not support the appellant's argument of a consensual and free-wheeling rhapsody of sexual expression.  In any event, we find that the attempted sodomy that the appellant engaged in -- regardless of whether one may arguably characterize the activity as consensual -- fell outside the "*Lawrence* zone of liberty."  *Id.* at 208.

Assuming *arguendo* that the military judge's verdict compels the conclusion that the appellant's attempted sodomy satisfies the first step in the *Marcum* analysis and brings the conduct within the *Lawrence* zone of liberty interest, we analyze the next step in the *Marcum* tripartite analysis.  Under the circumstances of this case, we find an "aggravating circumstance" that brings the appellant's conduct "outside the analysis in *Lawrence*."  *Id.* at 206-07.

Based on the military judge's special findings, it was clear that the attempted sodomy, indecent acts, and adultery were committed in an "open and notorious" manner.  Record at 237.  LCpl KS, who had previously received permission for ED and BC to spend the night in her room, was on the floor in her barracks room right next to the bed as the appellant attempted to sodomize BC and ED.  Because the appellant's conduct, attempted sodomy, was committed in an open and notorious manner, the appellant's conduct was outside *Lawrence's* protected liberty interest.  *See Lawrence*, 539 U.S. at 578 (finding the Texas sodomy statute unconstitutional, but declining to identify sodomy as a fundamental right and identifying situations involving "public conduct" as outside of the zone of liberty); *cf. Goings*, 72 M.J. at 207 (finding no plain error and rejecting *Lawrence* claim within the context of indecent acts under Article 134, UCMJ, because conduct was "open and notorious").  Accordingly, as-applied to the appellant's conduct, Article 125 is constitutional.[17]

---

[17] In addition to the appellant's attempted sodomy having been attempted in an "open and notorious" manner, we find several *Marcum* factors, unique to the military environment that militates against any constitutional protection. First, both BC and ED were married to other Marines.  Second, the conduct took place in LCpl KS's barracks room in a foreign country.  Third, the military judge found that the appellant's adulterous conduct was prejudicial to good order and discipline and also service discrediting.  Record at 242.

19

## V. Conclusion

The findings and the sentence as approved by the CA are affirmed.

Chief Judge MITCHELL and Judge MCDONALD concur.


For the Court



R.H. TROIDL
Clerk of Court