# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Senior Airman CLIFTON E. HUEBNER
### United States Air Force

### ACM 37696 (f rev)

### 16 April 2015

Sentence adjudged 14 December 2013 by GCM convened at Minot Air Force Base, North Dakota. Military Judge: Natalie Richardson.

Approved Sentence: Bad-conduct discharge, confinement for 3 years and 6 months, and reduction to E-1.

Appellate Counsel for the Appellant: Lieutenant Colonel Gail E. Crawford; Major Nicholas D. Carter; Captain Travis K. Ausland; Captain Luke D. Wilson; and Frank J. Spinner, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Linell A. Letendre; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Brian C. Mason; Major Naomi N. Porterfield; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON FURTHER REVIEW

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his plea, of one specification alleging that he engaged in unlawful sexual contact by intentionally touching the genitalia and anus of his 14-month-old son, EH,

with an unknown object on a single occasion in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The adjudged and approved sentence was a bad-conduct discharge, confinement for 3 years and 6 months, and reduction to E-1.[2]

The appellant argues that (1) the specification failed to place him on notice that a kick to the buttocks could be prosecuted under Article 120, UCMJ; (2) the evidence was factually and legally insufficient; (3) the verdict was ambiguous; (4) the military judge erred by allowing testimony that a physician believed that EH should be removed from the appellant's home; and (5) the military judge allowed improper sentencing argument. We disagree and affirm.

*Background*

The appellant's son began attending the Minot Air Force Base Child Development Center (CDC) in August 2008. On Monday, 26 January 2009, when the appellant brought his son to the CDC, he told one of the CDC employees that his son had a "bruise on his bottom." Later that morning, during EH's first CDC diaper change of the day, a child care assistant observed what she characterized as severe bruising around EH's anus, underneath his testicles, and his buttocks. The aide notified the CDC director, who also examined EH. One of the CDC personnel on duty on 26 January 2009 had been working the previous Friday and had not observed similar marks on EH that day. A pediatrician at the Minot Air Force Base hospital examined EH and opined that his injuries were consistent with "non-accidental trauma."

When interviewed by child protective services, the appellant said that he first noticed the bruises on EH on Sunday, 25 January 2009, and had no idea how they had occurred. The appellant was EH's only caregiver that weekend. Further into the interview the appellant speculated that the bruises might have resulted from EH's high chair. The following day, the appellant called the child protective services worker and said that EH might have sat on a toy.

Additional facts necessary to resolve the assigned errors are included below.

---

[1] The events charged under Article 120, UCMJ, 10 U.S.C. § 920, took place between on or about 23 January 2009 and 26 January 2009, meaning the appellant was charged and convicted under a prior version of Article 120, UCMJ, which applies to offenses committed between 1 October 2007 and 27 June 2012. *See Manual for Courts-Martial, United States*, App. 28 (2012 ed.).

[2] This was the appellant's second trial for this offense. We set aside the prior conviction and 14-year sentence in an unpublished decision, *United States v. Huebner*, ACM 37696 (A.F. Ct. Crim. App. 7 June 2013) (unpub. op.), after finding that the military judge abused his discretion in admitting evidence pursuant to Mil. R. Evid. 414.

The appellant contends that the specification was void for vagueness as applied to him. "Criminal conduct requires an act, generally by the defendant, mens rea, and appropriate notice that the act would be criminal. The notice may not be vague; otherwise, there is a possibility of discriminatory prosecution." *United States v. Boyett*, 42 M.J. 150, 152 (C.A.A.F. 1995). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33 (1963) (citations omitted).

Due process requires "fair notice" that an act is subject to criminal sanction and fair notice of the standard that is applicable to the forbidden conduct. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). A law is "void for vagueness" if "one could not reasonably understand that his contemplated conduct is proscribed." *Id.* (*quoting Parker v. Levy*, 417 U.S. 733, 757 (1974)) (internal quotation marks omitted). The sufficiency of statutory notice is determined in the light of the conduct with which a defendant is charged. *Parker*, 417 U.S. at 757. "Criminal statutes are presumed constitutionally valid, and the party attacking the constitutionality of a statute has the burden of proving otherwise." *United States v. Mansfield*, 33 M.J. 972, 989 (A.F.C.M.R. 1991), *aff'd*, 38 M.J. 415 (C.M.A. 1993).

We review whether a statute is unconstitutional as applied de novo. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012). The specification alleged that the appellant did "engage in sexual conduct, to wit: intentional touching of the genitalia and anus by an unknown object." The statute provided, and the military judge instructed, that "sexual contact" meant the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person . . . with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person." *Manual for Courts-Martial, United States*, App. 28, ¶ 45(t)(2) (2012 ed.).

The appellant's contention is two-fold: (1) he was not given notice which of the statute's theories of liability the government was alleging, and (2) he was not on notice that a kick to the buttocks could constitute sexual conduct. Neither argument is persuasive.

First, citing the legal principle that crimes should generally not be alleged in the disjunctive (*see*, *e.g.*, *United States v. Autrey*, 30 C.M.R. 252 (C.M.A. 1961)), the appellant argues that the various mentes reae contained within the definition of "sexual contact" render the specification defective. The military is a notice pleading jurisdiction. *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011). The specification clearly set

forth the elements of the offense. *See United States v. Williams*, 40 M.J. 379 (C.M.A. 1994) (stating that the test is not whether the specification "could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet"). Were the appellant uncertain about which of the mentes reae the government intended to prove, the proper remedy was to request a bill of particulars. *See* Rule for Courts-Martial (R.C.M.) 906(b)(6). This he did not do.

Second, as he did at trial, the appellant confuses the statutory definition of "sexual contact" with his own notion of the meaning of "sexual." In arguing that a kick to the buttocks—a theory without any evidentiary support in the record of trial[3]—should be charged as assault under Article 128, UCMJ, 10 U.S.C. § 928, he ignores the clear definition of "sexual contact" in Article 120, UCMJ. When a statutory definition exists, we need not venture beyond its terms. *See United States v. Kuemmerle*, 67 M.J. 141, 143–44 (C.A.A.F. 2009) (stating that other sources may be considered when there is no statutory definition). We find unpersuasive his argument that he was unaware that a kick to the buttocks, when coupled with one of the requisite mentes reae, did not meet the statutory definition of "sexual contact," as the touching of the buttocks with an intent to abuse is explicitly referenced in the definition.

We therefore find no error.[4]

*Factual and Legal Sufficiency*

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to

---

[3] The appellant raised this potential cause of the injury in hypothetical questions posed to expert witnesses.
[4] Although we conclude there was no error, we question whether the appellant would be able to establish prejudice given that this was his second trial on the same specification, and he raised this issue only on this second appeal.

"make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The elements of the offense required the government to prove beyond a reasonable doubt that at the place and time alleged, the appellant engaged in sexual contact, to wit: intentional touching of the genitalia and anus by an unknown object, with EH; and that at the time, EH had not attained the age of 12.

The appellant's attack on the sufficiency of the evidence centers on the adequacy of the medical examination and lack of direct evidence of intent. We have reviewed the record of trial, paying particular attention to the evidence and reasonable inferences that can be drawn therefrom, including the nature of the injury, the fact that the victim was in the appellant's care at the time the injury occurred, the appellant's varying statements to CDC workers and child protective services about the injury, and the expert testimony. In viewing the evidence in the light most favorable to the government, we conclude that a rational factfinder could have found beyond a reasonable doubt that the appellant caused the victim's injury and did so with one of the requisite mentes reae. Having reviewed the entire record and making allowances for not personally observing the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.

*Ambiguous Verdict*

As noted above, the members were required to find beyond a reasonable doubt that the appellant acted with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person. The military judge instructed them that they were not required to agree upon which of the mentes reae the appellant possessed at the time of the act; rather, the appellant could be convicted as long as a quorum agreed that the definition of "sexual contact" had been met.

The appellant now asserts that this is an insufficient general verdict. Our superior court has previously considered and rejected this argument. *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007).[5]

---

[5] The appellant argues that *United States v. Barberi*, 71 M.J. 127 (C.A.A.F. 2012), raises doubts about the continuing viability of *United States v. Brown*, 65 M.J. 356 (C.A.A.F. 2007). Staff Sergeant Barberi was charged with possessing child pornography. The Army Court of Criminal Appeals found that four of the six images introduced by the government were not child pornography. Before our superior court, citing *Stromberg v. California*, 283 U.S. 359 (1931), Barberi argued that the entire conviction for possession of child pornography must fail because the appellate court could not determine whether the conviction rested on constitutional or unconstitutional grounds. *Barberi*, 71 M.J. at 129. Our superior court set aside the conviction because they were unable to determine which images formed the basis for the conviction and whether the constitutionally-protected images may have contributed to the conviction. *Id.* at 132–33. However, after briefs were submitted in this case, our superior court determined that *Barberi* was wrongly decided. *United States v. Piolunek*, __ M.J. __ Nos. 14-0283/AF and 14-5006/AF (C.A.A.F. 26 March 2015). Therefore, *Barberi's* rationale is unavailing.

We see nothing in this case that compels an outcome different than *Brown*. Here, as in *Brown*, each of the members who voted guilty found beyond a reasonable doubt that the appellant possessed a culpable mental state listed in the statute. As each of the statute's mentes reae is constitutional, that is all that is required. *See Brown*, 65 M.J. at 359; *United States v. Piolunek*, __ M.J. __ Nos. 14-0283/AF and 14-5006/AF, slip op. at 12 (C.A.A.F. 26 March 2015).

*Testimony of Treating Physician*

Among the prosecution witnesses was the physician who treated EH after CDC workers saw the injuries. During direct examination he testified as follows:

> Q: After you examine [EH] what happened?
>
> A: So after I examine him, to include all the tests and I took all the information, I determined that one, at this time he was stable medically speaking. I still needed an abdominal [scan] to check on the status of his liver and spleen, but I also determined that I did not think he was safe to go home to his current residence with [the appellant], so I decided to call family advocacy—well family advocacy was already there, but child protective services, [law enforcement], the Sheriff, as well as medical photo, they came and took a bunch of photos as well.

There was no objection to this testimony.

On cross-examination, trial defense counsel explored the steps the physician had taken in his examination and the questions the physician asked the appellant about the cause of the injuries. During redirect, trial counsel returned to the importance of the medical history when treating a patient:

> Q: And when you're talking to a parent in cases of suspected child abuse or non-accidental trauma versus accidental trauma, how important is it to you to match up what the parent says with what you're observing in your examination?
>
> A: Very important because the story—for me to determine whether the child can safely go home or needs to be put into foster care, I have to make sure that the story matches up with the injuries.

Again, the defense did not object to this testimony. Trial defense counsel then re-engaged:

> Q: [Y]ou didn't let him go home because there was a suspicion of child abuse, correct?
>
> A: Non-accidental trauma, yes.
>
> Q: Right, there was a suspicion of that and so it would be appropriate to take the precaution not to release him until that issue could be resolved?
>
> A: Correct.
>
> Q: And that's part of what we're doing here today is trying to resolve that issue, would you agree with that?
>
> A: Correct.

Trial defense counsel continued this line of questioning and had the physician confirm that it was "other people's job," not his, to decide what actually happened.

The appellant now challenges the physician's statements concerning whether EH could safely return home with the appellant. Where an appellant has not preserved an issue by making a timely objection, we review for plain error. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). The appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Id*.

An expert witness may not opine on the guilt or innocence of the accused, *United States v. Diaz*, 59 M.J. 79, 89 (C.A.A.F. 2003), but may opine on the ultimate issue, *United States v. Cameron*, 21 M.J. 59, 63 (C.M.A. 1985). As the appellant acknowledges, the ultimate issues in this case were whether the injuries were caused by the appellant and whether they were inflicted with one of the requisite mentes reae. The physician did not opine on either issue and resisted trial defense counsel's attempt to characterize the act as child abuse.

We find unpersuasive the appellant's argument that the physician's testimony blurred the lines between the civil reporting standards, the quantum of evidence needed to remove a suspected victim of child abuse from a home, and the burden of proof beyond a reasonable doubt for a criminal conviction. Moreover, the lack of contemporaneous objection, trial defense counsel's decision to question the witness on this issue, and the physician's ready acknowledgement that it was not up to him to determine what had

actually occurred, cause us to conclude that even if there were error, there has been no material prejudice to the appellant's substantial rights.

The appellant also contends that trial counsel improperly argued, in rebuttal findings argument and without objection, that the physician "made the decision to remove [EH] from the care of the accused because he believed the accused sexually abused him." The context of the statement was a response to the defense's argument that military officers frequently have to make decisions on the evidence and resources available to them, which is often imperfect. Viewing trial counsel's comments in the context of the entire argument, we find no plain error. *See United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (stating that allegedly improper argument should be considered in the context of the entire court-martial).

*Sentencing Argument*

Trial counsel recommended a sentence including 15 years of confinement. Following argument, trial defense counsel noted that he found it "upsetting" that the government argued for 15 years when the appellant received a 14-year sentence at the initial trial. In response to defense counsel's statement, assistant trial counsel told the military judge that it wasn't unusual for a prosecutor to ask for a higher sentence in anticipation of the members' decision to adjudge less than what the government recommends. Based on that statement, the appellant asserts that trial counsel's request for 15 years was legal error.

Improper argument is a question of law that we review de novo. *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011). Absent objection, argument is reviewed for plain error. *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007). To prevail, the appellant must prove that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id*. (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)) (internal quotation marks omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial. The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). "An error is not 'plain and obvious' if, in the context of the entire trial, the [appellant] fails to show the military judge should [have intervened sua sponte.]" *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009). "[T]he lack of a defense objection is some measure of the minimal impact of [trial counsel's] improper comment." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)) (internal quotation marks omitted).

The recommended sentence was within the 20-year maximum. As the experienced civilian defense counsel noted, there was nothing legally objectionable about

trial counsel's argument. Generally, counsel may argue for any legal sentence regardless of a pretrial agreement's limitations. *See United States v. Wood*, 48 C.M.R. 528, 533 (C.M.A. 1974) ("[W]hile [defense counsel] may draw 'practical comforts' from his knowledge of the terms of a previous agreement with the convening authority, when he goes to court he must do all he can to obtain the court's independent judgment as to what constitutes a fair sentence for the accused."). We are persuaded that similar logic allows for trial counsel to argue for any legal sentence in a rehearing, even if the sentence that may be approved is less than that which may be adjudged. *See* R.C.M. 810(d) (stating that absent special circumstance, the approved sentence in a rehearing may not be in excess of or more severe than the approved sentence in the previous trial). The assistant trial counsel never stated that he believed a 15-year sentence was inappropriate, especially when considering that the prior court-martial adjudged a 14-year sentence for this very offense. We find no error in the government's sentencing argument.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).[6] Accordingly, the findings and the sentence are

**AFFIRMED.**

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

---

[6] Our June 2013 decision setting aside the prior conviction and 14-year sentence came nearly three years after the case was docketed with this court. Because this exceeded the 18-month standard set forth in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), and because the appellant ultimately received a substantially lighter sentence at his second court-martial, we have considered whether to grant relief either for a due process violation or under our broad Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority. *See Barker v. Wingo*, 407 U.S. 514 (1972); *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). We decline to grant relief. Most notably, the primary reason for the delay in issuing the first opinion was the fact that civilian appellate defense counsel did not file an assignment of errors until nearly two years after docketing. The appellant consented to several of his counsel's enlargement requests.